Floyd **BOLTON**, Plaintiff,

v.

**SCRIVNER, INC.**, Defendant.

No. CIV–93–364–A.

United States District Court,
W.D. Oklahoma.

Nov. 9, 1993.

Rick W. Bisher, Boettcher & Ryan, Oklahoma City, OK, for plaintiff.

Peter T. Van Dyke, James C. Chandler, Samuel R. Fulkerson, Lytle Soule & Curlee, Oklahoma City, OK, for defendant.

## ORDER

ALLEY, District Judge.

The matter before the Court is a Motion For Summary Judgment by defendant, Scrivner, Inc. ("Scrivner"), pursuant to Fed. R.Civ.P. 56(c). Since plaintiff, Floyd Bolton ("Bolton"), has filed a response to defendant's motion, the matter is now ripe for decision. Based upon a review of the supporting and opposing briefs, their appendices and the relevant case law, the Court grants defendant's motion.

### STATEMENT OF UNDISPUTED MATERIAL FACTS

Plaintiff Bolton, a 50–year–old man, had been employed by defendant Scrivner in the position of "order selector" at defendant's grocery warehouse in Oklahoma City since February 1989. Plaintiff has had several work-related injuries, the most recent of which occurred on October 17 and October 19, 1991 when both plaintiff's feet were accidentally injured by a co-worker. Plaintiff has not worked at his job since then. Scrivner's policy prohibits injured workers from returning to their positions unless they are found to be 100 percent fit by the company's medical doctor. Workers who are unable to return to work because of physical injury are eligible for unpaid leave of up to 24 months. Since October 1991, Bolton's job has been done by casual workers. This practice is permitted while regular workers are on leave under the collective bargaining agreement between Scrivner and the union representing Scrivner's workers, the Teamsters.

Bolton has been examined by several medical doctors regarding his physical condition before and since the October 1991 accidents. A medical doctor paid by Scrivner, Dr. Yvonne Fine, treated Bolton for injuries to his back in September 1991 and found him able to return to his job. In anticipation of a hearing before the Oklahoma Workers' Compensation Court regarding the injuries to Bolton's feet, both plaintiff and defendant hired medical experts to evaluate plaintiff's physical condition. In his evaluation, Bolton's expert, Dr. John Ellis, stated that Bolton had a permanent partial disability, due to various ailments, which affected his ability to work. However, Scrivner's expert, Dr. C.B. Pettigrew, reported that, despite the injuries, Bolton was not seriously disabled and should be able to return to his job. The court ultimately determined that Bolton was tem-

porarily totally disabled and awarded him benefits from October 23, 1991 to March 20, 1992.

Bolton also applied for and received unemployment insurance benefits, effective August 9, 1992. In granting benefits, the Oklahoma Employment Security Commission referred to the evidence of Bolton's physical disabilities. The Commission stated that the reason for plaintiff's unemployment was his inability to pass Scrivner's physical. The Commission also noted that Bolton would be able to work with restrictions on the amount of standing and lifting he would be required to perform.

In July 1992, Bolton asked that he be allowed to return to his position. Scrivner then sent Bolton back to Dr. Fine, who, after conducting a general evaluation, requested that Bolton be given a back evaluation. Based upon her evaluation and the back tests, Dr. Fine believed that Bolton's multiple injuries rendered him physically unable to perform required tasks as order selector. These tasks included lifting cartons that weighed over 70 pounds and standing for lengthy periods of time on concrete.

Bolton disagrees with Dr. Fine's conclusion that he should not be allowed to return to his job. However, he has not obtained another opinion from a medical specialist hired by the union, an option offered by the collective bargaining agreement. Nor has plaintiff provided Scrivner with an evaluation by his own doctor stating that he has fully recovered and is able to function as the job description requires. Bolton did consult with his union local about his treatment by Scrivner, indicating his desire to return to work and his belief that Scrivner was unfairly preventing him from doing so because of Dr. Fine's recommendation. Both the union local and Bolton's counsel decided not to pursue plaintiff's disagreement through arbitration.

On January 13, 1993, plaintiff filed a complaint with the Equal Employment Opportunities Commission (EEOC), alleging that Scrivner denied him the right to return to his job due to his disability and age. Plaintiff subsequently received his right to sue letter from the EEOC on January 29, 1993. On March 2, 1993, plaintiff filed a complaint in this Court, alleging that his treatment by Scrivner and its policy of not allowing injured workers to return to their jobs violated both the Americans With Disabilities Act (ADA) and the Age Discrimination in Employment Act (ADEA), as well as state public policy. Bolton also alleged several state law causes of action, including conspiracy to commit fraud and workers' compensation retaliatory discharge.

## SUMMARY JUDGMENT

Summary judgment is appropriate if the pleadings, affidavits and depositions "show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). Any doubt as to the existence of a genuine issue of material fact must be resolved against the party seeking summary judgment. In addition, the inferences drawn from the facts presented must be construed in the light most favorable to the nonmoving party. *Board of Education v. Pico,* 457 U.S. 853, 863, 102 S.Ct. 2799, 2806, 73 L.Ed.2d 435 (1982). Nonetheless, a party opposing a motion for summary judgment may not simply allege that there are disputed issues of fact; rather the party "must set forth *specific* facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c) (emphasis added). *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2511 (citations omitted).

Bolton has alleged that Scrivner's policy and practice with respect to injured and disabled employees and his own treatment by Scrivner in this case violate both the Americans With Disabilities Act, 42 U.S.C. § 12101, *et seq.,* and the Age Discrimination In Employment Act of 1967, 29 U.S.C. § 621, *et seq.* Scrivner asserts that Bolton has not made out a prima facie case under either federal cause of action. Essentially the same set of facts are used by Bolton to prove both

claims. This overlap of facts puts plaintiff in a dissonant posture, as will be discussed below; because for success on his first claim he must be disabled and on his second claim, he must be able. These facts, and Scrivner's challenges to Bolton's legal conclusions, are the basis for this Court's analysis with respect to each statute.[1]

## A. Plaintiff's Claim Under the Americans With Disabilities Act (ADA)

■ The Americans With Disabilities Act (ADA) states that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (West 1993 Supp.). Plaintiff claims that defendant engages in a policy of discriminating against disabled workers by preventing them from returning to their jobs after a period of disability. In particular, plaintiff claims that defendant violates the ADA by refusing to provide a "reasonable accommodation" for his physical restrictions so that he may return to work. Scrivner argues that plaintiff should suffer a summary judgment because the ADA is inapplicable to Bolton. The Court agrees.[2]

The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8) (West 1993 Supp.) In § 12102, "disability" is defined as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2) (West 1993 Supp.). This definition of disability is essentially the same as that in the Rehabilitation Act of 1973, 29 U.S.C. § 706(8)(B). See Chandler v. City of Dallas, 2 F.3d 1385, 1391 (5th Cir.1993) ("The ADA defines a disability in substantially the same terms as the Act defines an individual with handicaps (now an individual with disability)."). In determining whether plaintiff is in fact disabled, the Court is guided by how this language has been construed under the Rehabilitation Act.

Defendant cites Welsh v. City of Tulsa, 977 F.2d 1415 (10th Cir.1992), to support its contention that the plaintiff is not handicapped under the ADA. Welsh involved an applicant for the position of firefighter who was rejected because of sensory deficits in his hand. The fire department declined to hire the applicant because his physical limitations would preclude satisfactory performance of

1. Scrivner's first contention is that Bolton, in fact, is not terminated from his position and, consequently, all his causes of action should be dismissed. See Plaintiff's Brief at 5. Whether plaintiff is currently employed by Scrivner is clearly in dispute from the facts of this case and, therefore, must be resolved in favor of the plaintiff's position as the non-moving party for the purposes of this motion. Moreover, the undisputed facts indicate that Bolton has not worked at his job since October 1991 nor has he received any compensation from Scrivner as an employee. Even if Bolton was considered to be on uncompensated medical leave, as Scrivner argues, the net effect on him would be basically the same. Nevertheless, for the purpose of analyzing plaintiff's federal claims, the Court will assume arguendo that Bolton was discharged by Scrivner.

2. Scrivner initially argues that Bolton failed to state an ADA claim because the alleged discriminatory event giving rise to his claim occurred prior to the effective date of the Act, July 26, 1992. See Defendant's Brief at 19. Defendant suggests that the only potential evidence of discrimination based upon disability offered by plaintiff is Dr. Fine's report from July 16, 1992 stating that plaintiff is unable to work. However, plaintiff's ADA claim is that the discrimination by Scrivner is an on-going practice. Scrivner cites case law which suggests that the failure to re-employ due to disability is evidence of neither continuing discrimination nor a continuing policy of discrimination for the purposes of the ADA. See Morrison v. Detroit–Macomb Hospital Corporation, 62 Empl.Prac.Dec. (CCH) ¶ 42,368, 1993 WL 316009 (E.D.Mich.1993). However, on the facts as presented, when Scrivner actually violated the ADA, if at all, remains unclear. Was it when Bolton was injured in October 1991? Was it when Scrivner refused to let Bolton return to work after his first request? After his second request? Because the facts regarding this issue are in dispute, the Court must give plaintiff the benefit of the doubt by assuming that the ADA applies to the time period of his claim.

essential fire duties. *Id.* at 1416. In determining whether Welsh was disabled under the Rehabilitation Act, the Tenth Circuit noted that there were two elements involved: first, impairment and, second, whether the impairment substantially limited one or more major life activities. *Id.* at 1417. Examining the second of the two factors, the court held that "an impairment that an employer perceives as limiting an individual's ability to perform only one job is not a handicap under the Act." *Id.* at 1419. The court suggested that several factors were relevant to the analysis of whether an impairment limited a person's employment potential. These included the number and type of jobs from which the individual was disqualified, the geographic area to which the individual had access and the individual's job training and expectations. *Id.* Because the plaintiff in *Welsh* would have had the burden of proving at trial that his impairment substantially limited a major life activity, the Tenth Circuit noted that "he was obligated to come forward with 'specific facts showing that there is a genuine issue for trial' on this matter" in order to avoid summary judgment. *Id.* (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). Thus, the Court of Appeals affirmed the district court's grant of summary judgment in favor of Tulsa.

▮▮ Given the Tenth Circuit's interpretation of the Rehabilitation Act language in *Welsh,* it appears that Bolton's claim cannot survive summary judgment based upon the undisputed facts. Plaintiff has presented ample evidence that he is unable to work at the position without some accommodation. Indeed, the essence of his claim is that Scrivner should modify the working conditions in order to make it possible for plaintiff to return to his former job. However, just as with the plaintiff in *Welsh,* the burden would

be on Bolton to demonstrate that he is disabled in some more general sense transcending his specific job, that his limitations substantially impaired a major life activity in order to establish his prima facie case under the ADA. The record is bereft of any evidence which would support such a contention. Beyond the evidence regarding the specific position of selector, plaintiff offers no evidence relevant to any of the factors, listed in *Welsh,* that should be used in evaluating whether an impairment substantially limits his employment potential. While Bolton certainly cannot perform the particular job of selector without assistance (and indeed would be restricted from doing a number of physical jobs), such limitations do not answer the more important inquiry of how they restrict Bolton's overall employment opportunities. To make a somewhat extended analogy, the mere fact that the average person on the street could not play fullback on the New York Giants without some assistance does not mean that he or she is handicapped as defined by the ADA. As noted in *Welsh,* "[a]ny other interpretation would render meaningless the requirement that the impairment *substantially* limit a *major* activity."[3] 977 F.2d at 1419.

▮ Moreover, the restrictions that both Dr. Ellis and Dr. Fine noted regarding Bolton's physical condition (and, as plaintiff concedes, impair him) include restrictions on tasks that Scrivner considers important to the performance of the job of selector. The determinations of both the Workers' Compensation Court and the Employment Security Commission only reinforce the conclusion that Bolton does not have the ability to perform the required tasks of this specific position. Bolton's physical limitations directly relate to his qualifications for the position of selector as Scrivner has defined it.[4]

3. Bolton argues that working is obviously a major life activity under the ADA. However, this misses the point. As the court noted in *Welsh,* "While the regulations define a major life activity to include working, this does not necessarily mean working at a job of one's choice." 977 F.2d at 1417 (citing *Tudyman v. United Airlines,* 608 F.Supp. 739, 745 (C.D.Cal.1984)).

4. Plaintiff also argues that Scrivner's policy of preventing employees with physical restrictions

from returning to their positions violates the ADA. To start, the Court is presented with insufficient evidence regarding other employees who have been treated in a manner similar to Bolton. Moreover, the fact that Scrivner prevents injured employees from returning to their specific jobs does not violate the ADA *per se.* One could easily imagine circumstances similar to Bolton's in which an employee was not allowed to return to his or her particular position because of physical

Because Bolton has failed to offer specific evidence to show that there is a genuine dispute of material fact regarding his eligibility under the ADA, an element for which Bolton would bear the burden of proof at trial, defendant's motion is granted with respect to this claim.

## B. Plaintiff's Claim Under the Age Discrimination In Employment Act of 1967 (ADEA)

Plaintiff's claim involving the Age Discrimination In Employment Act of 1967 (ADEA), 29 U.S.C. § 621, *et seq.*, is essentially the same as his claim under the ADA. Using the same facts, Bolton asserts that Scrivner's policy and his treatment demonstrate that Scrivner discriminates against older workers. As with the ADA claim, Scrivner argues that Bolton has not made out a prima facie case under ADEA.

 In a manner similar to the ADA with respect to disabled persons, ADEA prevents an employer from discriminating against an individual on the basis of age.[5] The required elements for a prima facie case under ADEA, as well as the relative burdens of production and persuasion, are well-established. As the Supreme Court held in the context of Title VII in *McDonnell–Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) and *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), a plaintiff must show that he is within the protected age group, that he is doing satisfactory work, that he was discharged despite the adequacy of his work and that a younger person replaced him. *See E.E.O.C. v. Sperry Corp.*, 852 F.2d 503 (10th Cir.1988). Once the plaintiff meets his burden of production,

the burden shifts to the defendant to demonstrate a legitimate, nondiscriminatory reason for its actions. If the employer does so, the burden then shifts back to the plaintiff to present evidence that the employer's purported justification is a pretext. *See E.E.O.C. v. Flasher Co., Inc.*, 986 F.2d 1312 (10th Cir.1992). After all evidence has been produced, the inquiry becomes whether the plaintiff has presented sufficient evidence to permit a reasonable factfinder to find that age was a determinative factor in the employer's decision. *See Sperry Corp.*, 852 F.2d at 507. The ultimate burden of proving that age was a determining factor remains with the plaintiff. *See Lucas v. Dover Corp., Norris Div.*, 857 F.2d 1397, 1401 (10th Cir. 1988); *Cooper v. Asplundh Tree Expert Co.*, 836 F.2d 1544, 1547 (10th Cir.1988). *See also St. Mary's Honor Society v. Hicks*, —— U.S. ——, ——, 113 S.Ct. 2742, 2747, 125 L.Ed.2d 407 (1993) ("[A]lthough the *McDonnell–Douglas* presumption shifts the burden of production to the defendant, [t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.") (citations and quotations omitted). "If the plaintiff establishes that the cited reasons for his termination were pretextual, the factfinder can infer that discrimination took place." *Merrick v. Northern Natural Gas Co.*, 911 F.2d 426, 429 (10th Cir.1990).

In examining Bolton's prima facie case, it is without question that Bolton is within the age group covered by ADEA. While defendant asserts that plaintiff was not discharged, the Court will assume that he was for the purposes of this motion, as discussed earlier. Defendant further contends that

---

limitations. The ADA does not require employers to modify the actual duties of a job in order to make an accommodation for individuals who are not physically capable of performing them. *See* 42 U.S.C. § 12111(8) (West 1993 Supp.) ("For the purposes of this title, consideration shall be given to the employer's judgment as to what functions of a job are essential ..."). The statute still requires that an individual be able to "perform the essential functions of the employment position ..." *Id.*

**5.** The Act states,
It shall be unlawful for an employer—

(1) to fail or refuse to hire or discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age;

(2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age; ...

29 U.S.C. § 623(a) (West 1985 & 1993 Supp.).

Bolton was not replaced by younger workers, but by casual workers. While these replacement workers may indeed be older or younger than Bolton, the Court will assume that the fact that he was replaced by workers who are paid less and offered fewer benefits satisfies his prima facie burden. Finally, there is evidence that Bolton performed his job well enough to remain employed before he was injured. Therefore, the Court will conclude that Bolton's performance was sufficiently adequate to meet this last required element of the prima facie case.[6] *See MacDonald v. Eastern Wyoming Mental Health Center,* 941 F.2d 1115, 1121 (10th Cir.1991) ("[A] plaintiff may make out a prima facie case of discrimination in a discharge case by credible evidence that she continued to possess the objective qualifications she held when she was hired, her own testimony that her work was satisfactory, even when disputed by her employer, or by evidence that she held the position for a significant period of time.") (citations omitted).

Nevertheless, even if the Court assumes that Bolton has made out his entire prima facie case, the central query at the next stage of the court's analysis involves Scrivner's asserted justification that Bolton's disability prevents him from doing the job of selector. Bolton's position regarding his ADA claim must be kept in mind in the Court's analysis. As discussed earlier, plaintiff asserted that defendant was preventing him from working because of his disabilities. Indeed, Bolton's ADA claim hinged on his belief that he was entitled to an accommodation so that he may return to work. In so arguing, plaintiff acknowledged that his physical limitations played a significant role in Scrivner's decisionmaking.

The essential question, therefore, is whether Bolton has sufficient evidence to persuade a jury that Scrivner's rationale (his disability) was merely a pretext for age discrimination. *See Hicks,* —— U.S. at ——, 113 S.Ct. at 2749 ("The defendant's 'production' (whatever its persuasive effect) having been made, the tri-

er of fact proceeds to decide the ultimate question: whether plaintiff has proven 'that the defendant intentionally discriminated against [him]' . . .") (citation omitted); *Flasher Co.,* 986 F.2d at 1321. Based upon the evidence before the Court, plaintiff cannot meet his burden. Three medical doctors have evaluated Bolton (Drs. Ellis, Fine, and Pettigrew), two of whom came to the conclusion that he had disabilities severe enough to prevent him from working at a job requiring long hours of standing and heavy lifting. One of the doctors was Dr. Ellis, the very doctor plaintiff hired to help prove his claim before the Workers' Compensation Court. While admittedly there is a conflict between the conclusions of Drs. Ellis and Fine and the conclusion of Dr. Pettigrew, the question is not whether Scrivner should have believed one doctor over another. *See Hicks,* —— U.S. ——, 113 S.Ct. at 2748 ("In the nature of things, the determination that a defendant has met its burden of production (and thus has rebutted any legal presumption of intentional discrimination) can involve no credibility assessment."). Rather, the burden shifts back to Bolton, as the plaintiff, to come forward with evidence that demonstrates that Scrivner's excuse was only a pretext for discrimination. *See Flasher Co.,* 986 F.2d at 1316 ("Once the defendant has set forth a facially nondiscriminatory reason for termination, the plaintiff then assumes the normal burden of any plaintiff to prove his or her case at trial.").

Some question has recently arisen regarding whether it is appropriate to grant summary judgment at this stage of a court's analysis. A California District Court of Appeal case, *Moisi v. College of the Sequoias Community College District,* 19 Cal.App.4th 564, 25 Cal.Rptr.2d 165 (1993), suggests that the U.S. Supreme Court's decision in *Hicks* precludes summary judgment at this stage because the production of evidence of a nondiscriminatory reason does not eliminate an inherent need to assess the credibility of the defendant's offering.[7] Because "credibility

---

6. There is some mention in deposition testimony that Bolton was slower than some of his coworkers at doing his job. However, there is no evi-

dence that Bolton was so slow as to place his employment in jeopardy.

7. The Court recognizes that *Moisi* is controlling authority in California only. Indeed, the Califor-

issues may not be resolved at summary judgment but are left for the trier of fact," the California court reasoned that summary judgment will often be inappropriate in cases where a plaintiff has established a prima facie case. 19 Cal.App.4th at 574, 25 Cal. Rptr.2d at 172. The basis for the *Moisi* decision comes from a passage in *Hicks,* which states, "The factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination. Thus, rejection of the defendant's proffered reasons, will *permit* the trier of fact to infer the ultimate fact of intentional discrimination, and the Court of Appeals was correct when it noted that, upon such rejection, '[n]o additional proof of discrimination is *required.*'" *Hicks,* —— U.S. at ——, 113 S.Ct. at 2749 (emphasis in original) (citations and footnote omitted). However, the California court misreads *Hicks* in light of well-established law regarding both employment discrimination and summary judgment procedures.

 The language in *Hicks* cited by the *Moisi* court states only that a factfinder's refusal to believe a defendant's proffer, combined with a prima facie case, is sufficient to draw an inference of discrimination. The plaintiff need not provide additional evidence in order for the factfinder's judgment to be valid.[8] However, *Hicks* consistently reaffirms that the ultimate burden of proof remains, as always, with the plaintiff in such a circumstance. *See* —— U.S. at ——, 113 S.Ct. at 2747. The plaintiff must still present sufficient evidence to create controversy

regarding the credibility of the defendant's justification. *See MacDonald,* 941 F.2d at 1121–22 ("The court 'must still make a judgment as to whether the evidence, interpreted favorably to the plaintiff, could persuade a reasonable jury that the employer had discriminated against the plaintiff.'") (quoting *Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1570 (7th Cir.1989)). *See also Martin v. Nannie and the Newborns, Inc.,* 3 F.3d 1410 (10th Cir.1993) (decided after *Hicks* ).

 At the summary judgment stage, a plaintiff who does not produce specific evidence to create an issue of material fact is not allowed to avoid summary judgment and go forward to trial. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56(e). This is particularly so in circumstances where plaintiff bears the ultimate burden of *proving* their case. The California court's position would permit a plaintiff to ignore this burden of production and proceed to trial when he has offered no evidence that could possibly controvert the defendant's justification. *Cf. LeBlanc v. Great American Insurance Company,* 6 F.3d 836, 843 (1st Cir.1993) ("In the context of the summary judgment proceeding, *Hicks* requires that, once the employer has advanced a legitimate nondiscriminatory basis for its adverse employment decision, the plaintiff, before becoming entitled to bring the case before the trier of fact, must show evidence sufficient for the factfinder reasonably to conclude that the employer's decision to discharge him or her was wrongfully based on age.") (citations omitted). Such a standard as the court adopts in *Moisi* would be much lower than the one used for civil plaintiffs in other areas

nia appellate court made explicitly clear that it was interpreting *Hicks* in light of California law and in a manner quite possibly at odds with the law of the federal circuit courts of appeal. *See* 19 Cal.App.4th at 573–575, 25 Cal.Rptr.2d at 171–172. Nevertheless, the Court takes this opportunity to address *Moisi* as its reasoning could be used to justify a change in the law unsupported by the governing jurisprudence of this circuit.

8. This makes sense in light of the *McDonnell–Douglas/Burdine* system of shifting burdens. If the plaintiff first makes his prima facie case and the defendant then offers a nondiscriminatory

justification, we return to square one with all the burdens back on the plaintiff. If, however, a factfinder arrives at this third level and decides, based upon the evidence, not to believe what the defendant purports to be the reason for its actions, it makes sense that we treat the defendant's proffer as if it never existed and allow the factfinder to rule in favor of the plaintiff based solely on the prima facie case. However, it is at the gateway between the second and third levels of this balancing act where the plaintiff is required to provide some type of evidence of pretext in order to require the factfinder to evaluate the defendant's rationale.

of the law and would be unsupported by case law from either the Supreme Court or the federal courts of appeal.

Moreover, the particular need to test credibility which appears to motivate the *Moisi* court is less important when the justification offered by the defendant is supported by pre-existing evidence (i.e., a long established, well-documented policy), as it is in Bolton's case. Perhaps, for example, in a case where the subjective evaluation of a supervisor provides the basis for the defendant's defense, credibility might be relevant to the evaluation of pretext. However, even in such a circumstance, it would still be incumbent upon the plaintiff to provide the court with at least some basis, some rationale why it should allow this excursion into the witness' (and, ultimately, the defendant's) credibility. Given the context of Title VII and ADEA, that rationale must be relevant to the plaintiff's burden of producing evidence from which a jury could infer discriminatory intent. Without such a limitation, every plaintiff in an ADEA or Title VII case would be entitled to a trip to the factfinder even if he or she had no specific evidence of discrimination to support the claim. *Hicks* was not meant to render such a result.

In the end, nothing in *Hicks* could possibly be read as disfavoring use of the summary judgment procedure, especially since the case reaffirmed that the plaintiff bears the ultimate burden of persuasion in employment discrimination cases. Rather, the Supreme Court's language was only intended to guide lower courts in balancing the burdens of proof and persuasion that are part and parcel of every employment discrimination case since *McDonnell–Douglas* was decided over 20 years ago. *Hicks* does nothing to alter the requirement that the plaintiff must pro-

vide evidence to support an actual finding of discrimination. *See* —— U.S. at —— n. 4, 113 S.Ct. at 2749, n. 4.

■ In the case at hand, the only direct evidence which Bolton introduces on the question of pretext is testimony regarding comments made by his immediate supervisor, David Goodpasture. Plaintiff testified that Goodpasture made numerous derogatory remarks regarding his age and his lack of speed. Several of Bolton's co-workers testified in depositions that they had heard Goodpasture make such comments. It is unclear from this testimony exactly what the purpose was of Goodpasture's remarks.[9] Moreover, Scrivner presents evidence that, although he was Bolton's immediate supervisor, Goodpasture played no role in the decision not to allow plaintiff to return to his job or in any decision involving the continued employment of other older or injured workers. Bolton offers no evidence to contradict this.

Ultimately, plaintiff's proffer is insufficient to meet his burden. As one court has observed, "An age discrimination plaintiff must demonstrate that a nexus exists between allegedly discriminatory statements and the unfavorable employment decision at issue." *O'Connor v. Consolidated Coin Caterers Corporation,* 829 F.Supp. 155 (W.D.N.C.1993) (citing *E.E.O.C. v. Clay Printing Co.,* 955 F.2d 936, 942 (4th Cir.1992)). *Cf. Tennaro v. Ryder System, Inc.,* 832 F.Supp. 494 (D.Mass.1993) (denying summary judgment when remarks about plaintiff's age were made by supervisor who fired him). Plaintiff fails to establish such a connection regarding Goodpasture's remarks. Moreover, Bolton fails to introduce any other direct evidence from which a reasonable jury could find pretext.[10] Nor has plaintiff presented any cir-

---

9. Indeed, several of the co-workers testified that Goodpasture might have been trying to encourage Bolton to meet production standards. Bolton filed two grievances with his union local against Goodpasture for remarks Goodpasture made. *See* Plaintiff's Exhibit 15. These complaints were dated March 28, 1991 and July 25, 1991. In neither document did Bolton state that Goodpasture's comments related to his age. In the complaint from March 1991, Bolton stated only that he believed that Goodpasture was "harassing and discriminating against me." In his July 1991 complaint, Bolton detailed how Good-

pasture would not let him work after he was injured because Bolton's release form restricted him to light duty. Neither complaint contains sufficient information to infer anything meaningful about Goodpasture's intent.

10. Plaintiff presents several internal memos from management at Scrivner in order to suggest that the company's policy either intended to or had the effect of discriminating against older (and disabled) workers. *See* Plaintiff's Exhibits 7–9. This evidence does more to hurt than help plain-

cumstantial evidence from which the Court could infer discriminatory motive on the part of Scrivner.[11] *See Lucas,* 857 F.2d at 1400 ("A party may attempt to 'meet his burden directly, by presenting direct or circumstantial evidence that age was a determining factor in his discharge.'") (quoting *La Montagne v. American Convenience Products, Inc.,* 750 F.2d 1405, 1409 (7th Cir.1984)). In the end, plaintiff fails to introduce any evidence giving rise to genuine issues of material fact showing that Scrivner's justification was pretextual. *See Martin,* 3 F.3d at 1417; *MacDonald,* 941 F.2d at 1121–22; *Merrick,* 911 F.2d at 430. Because Bolton cannot meet the required burden, his ADEA claim cannot survive summary judgment.

## CONCLUSION

Scrivner's Motion For Summary Judgment is GRANTED with respect to Bolton's federal claims under the ADA and ADEA. The Court declines to entertain jurisdiction over plaintiff's state law claims, pursuant to 28 U.S.C. § 1367(c), to include a complaint of retaliatory discharge, and they are DISMISSED WITHOUT PREJUDICE. The Court expresses no opinion regarding the merit of other contentions raised in defendant's brief concerning plaintiff's state law causes of action.

It is so ordered.

tiff's cause. Plaintiff's Exhibit 7, a memo from Don Tenbrunsel to All Supervisors, dated January 10, 1991, states in part, *"On-the-job injury—* No employee may return to work without an approved return to work slip from Presbyterian." Plaintiff's Exhibit 8, a memo from Jim Davis to All Warehouse Supervisors, dated July 26, 1991, states in part, "If an injury results in work time lost by the employee, he must have a full written release from the company's physician before he can return to work—no exceptions. A release with any restrictions, light duty, no walking, no lifting, etc., is not acceptable." Plaintiff's Exhibit 9, a memo from Don Tenbrunsel to All Supervisors, dated December 23, 1991, reiterates much of the content of the previous two memos. None of these documents indicate that the company intended to discriminate against older or disabled workers. Each document is clear that

the "no return" policy applies to all workers, regardless of age or any other factor. A factfinder could not reasonably infer from these memos that Scrivner's policy was intended to discriminate against older workers, either directly or indirectly.

11. Plaintiff suggests that the Court should infer disparate treatment from the fact that Scrivner stood to benefit financially by hiring casual workers to replace regular workers who were either older or injured. Absent some evidence that such concerns mattered to Scrivner when it decided to institute its injured workers policy or when it decided to prevent Bolton from returning, a reasonable jury could not infer that cost savings alone indicate an intent to discriminate on the basis of age. *See Sperry Corp.,* 852 F.2d at 511–12.