**Charlie M. MILTON, Plaintiff**

**v.**

**SCRIVNER, INC., Defendant.**

**No. CIV–93–1748–C.**

United States District Court,
W.D. Oklahoma.

May 27, 1994.

Rick W. Bisher, Boettcher & Ryan, Oklahoma City, OK, for plaintiff.

Peter T. VanDyke and James C. Chandler, Lytle Soule & Curlee, Oklahoma City, OK, for defendant.

## ORDER

CAUTHRON, District Judge.

This matter is before the Court for consideration of a motion for summary judgment filed on behalf of the defendant Scrivner, Inc. ("Scrivner"). By order dated March 30, 1994, plaintiff's initial response to the motion was stricken for failure to comply with the rules that require a non-movant to specifically address each fact that a moving party contends is not in dispute. Further, the rules require a non-movant to identify that portion of the record that substantiates there is no dispute as to a material fact.

On April 6, 1994, plaintiff filed an amended response that cured some of these defects. Although plaintiff has identified certain items of evidence that relate to the statements plaintiff claims are not in dispute, much of that support is found not in this case, but in the cases of *Bolton v. Scrivner, Inc.*, 836 F.Supp. 783 (W.D.Okla.1993) and *Massey v. Scrivner, Inc.*, 901 F.Supp. 1546 (W.D.Okla. 1994). However, before evidence in other cases may be used in this case, it must be established that the actions involve the same subject matter and are between the same parties or their representatives or successors in interest. Fed.R.Civ.P. 32(a)(4). In his objection filed April 14, 1994, plaintiff admits that these materials are from other cases. Plaintiff contends, however, that he may use this information because "[s]worn testimony is sworn testimony anywhere it is used." Plaintiff's Objection to Defendant's Application for Leave to File Reply Brief at unnumbered page 2 (April 14, 1994). Apparently, plaintiff has overlooked the implications of Fed.R.Civ.P. 32 because plaintiff contends "Defendant has not cited any statute or court rule which prevents Plaintiff from using sworn testimony from another case to support his argument." This Court disagrees. In the reply brief, filed April 22, 1994, Scrivner addresses plaintiff's statement and requests that materials from unrelated litigation be stricken.

The Court has read the reported decision in *Bolton* and notes that counsel for the plaintiff and defendant in *Bolton* are the same as counsel in the present litigation. *Bolton* involved the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., and the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, et seq., as well as a claim of retaliatory discharge. In this case, the stated reason for Milton's termination is his inability to meet Scrivner's production standards, an issue apparently not involved in *Bolton*.[*] The Court

---

[*] Milton makes some reference to the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. However, from a review of plaintiff's complaint and the agreed pretrial order, the Court concludes plaintiff's federal claim is for a violation of the ADA.

has reviewed the items of evidence taken in the other cases and concludes that even if allowed, this material does not establish the existence of disputed material facts that preclude the entry of summary judgment.

Scrivner is a wholesale grocery supplier where plaintiff was employed from approximately 1978 to 1992. Plaintiff was an order selector. In this capacity, plaintiff was required to perform repetitive lifting and handling of warehouse items. In 1992, to increase productivity, new production standards were implemented for Scrivner's warehouse. Production standards set the amount of time in which a task must be completed.

Plaintiff contends he suffers from disabilities as a result of on-the-job injuries and that these disabilities prevent him from meeting the new production standards. When plaintiff failed to meet these new standards, plaintiff was terminated. Prior to his termination, plaintiff did not request a specific job accommodation. Although plaintiff was subject to the terms of a collective bargaining agreement ("CBA") between Scrivner and Teamster Local Union No. 886, plaintiff lacked the seniority necessary under the CBA to bid or transfer to another job.

Although the Court will construe the facts and inferences drawn from the record before it in the light favoring the non-movant, "[e]ven under this standard there are cases where the evidence is so weak that the case does not raise a genuine issue of fact." *Burnette v. Dow Chemical Co.*, 849 F.2d 1269, 1273 (10th Cir.1988). The question in a case for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient;" to defeat a motion for summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed

'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986), quoting from Fed.R.Civ.P. 1.

Defendant seeks summary judgment on alternative theories. First, defendant argues plaintiff's state law claims are pre-empted by federal law. Further, to the extent the claims are not pre-empted, they should be dismissed for plaintiff's failure to exhaust the CBA remedies prior to seeking relief in this Court and for failing to timely initiate this litigation. Alternatively, defendant contends based on the undisputed evidence, defendant is entitled to summary judgment as plaintiff cannot establish a prima facie case of intentional disability discrimination. The Court has carefully reviewed the evidence submitted by plaintiff and finds that despite plaintiff's challenges to certain material facts, there is no dispute as to the following material facts. Production standards for the order selector job constitute an essential function of that job. Although in the past plaintiff has suffered injuries as a result of events occurring on the job, plaintiff is not substantially limited in his ability to work. In fact, after plaintiff was terminated, he represented to the Oklahoma Employment Securities Commission that he was not limited in his ability to work.

## 1. Pre–Emption

In its first proposition, Scrivner argues plaintiff's claims are pre-empted by the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151, et seq., the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 141, et seq., and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1144(a). Plaintiff relies on *Burk v. K–Mart Corp.*, 770 P.2d 24 (Okla.1989), and *Sargent v. Central Nat. Bank & Trust Co.*, 809 P.2d 1298 (Okla. 1991), to support his argument that federal law does not pre-empt the public policy exception outlined in these cases. *Sargent* involved a wrongful discharge claim held not to be pre-empted by the National Bank Act, 12 U.S.C. § 21. *Tate v. Browning–Ferris, Inc.*, 833 P.2d 1218 (Okla.1992), another case upon which plaintiff relies, is a Title VII case

**1544**

where it was recognized that a state's remedies for employment discrimination may be broader than those provided by federal law.

In plaintiff's complaint he alleges federal question jurisdiction as a result of his ADA claim. In Count I he alleges disability discrimination. Count II also involves disability discrimination and alleges plaintiff's termination and Scrivner's failure to allow plaintiff to return to work were wrongful and violate state public policy. In Count III, plaintiff claims Scrivner conspired to commit fraud and deceit. Plaintiff alleges Scrivner's refusal to allow disabled employees to return to work violates, and is a scheme to circumvent, existing union contracts. Plaintiff also alleges that Scrivner employs part-time labor with fewer benefits and at a lower salary to circumvent the union contracts.

■ Federal law provides employees have the right to engage in concerted activities for the purpose of collective bargaining. 29 U.S.C. § 157. Unfair labor practices are defined in 29 U.S.C. § 158 and include an employer's interference, restraint, or coercion of employees in the exercise of the rights recognized in § 157. The Court finds plaintiff's claims based on interference with rights grounded in his CBA are "concerted activities" and covered by § 157, NLRA. *NLRB v. City Disposal Systems, Inc.,* 465 U.S. 822, 104 S.Ct. 1505, 79 L.Ed.2d 839 (1984); *San Diego Bldg. Trades Council v. Garmon,* 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). *See also Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 209–10, 105 S.Ct. 1904, 1910–11, 85 L.Ed.2d 206 (1985), and the discussion therein of *Local 174, Teamsters v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962), concluding "a suit in state court alleging a violation of a provision of a labor contract must be brought under § 301 [of the LMRA] and be resolved by reference to federal law. A state rule that purports to define the meaning or scope of a term in a contract suit therefore is pre-empted by federal labor law." *Lueck,* at 210, 105 S.Ct. at 1911. Having found plaintiff's claims are concerted activities, this Court follows the conclusion reached in *Lueck* that "when resolution of a state law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, . . . [citations omitted] or dismissed as pre-empted by federal labor-contract law." *Lueck,* at 220, 105 S.Ct. at 1916. *See also Saunders v. Amoco Pipeline Co.,* 927 F.2d 1154 (10th Cir.1991), *cert. denied,* 502 U.S. 894, 112 S.Ct. 264, 116 L.Ed.2d 217 (1991).

**Exhaustion, Limitations**

■ To the extent plaintiff claims his termination was an attempt to defraud injured employees of their welfare plan benefits, the Court finds this claim is also pre-empted by ERISA. *See Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990); *Kelso v. General American Life Ins. Co.,* 967 F.2d 388, 390–91 (10th Cir.1992); and 29 U.S.C. § 1144(a). This same conclusion applies to plaintiff's claim of conspiracy to commit fraud.

■ There is an additional reason why this Court should not proceed on plaintiff's claims involving his CBA. Case law has established that plaintiff should attempt use of the grievance procedure under the CBA. *See DelCostello v. Int'l Brotherhood of Teamsters,* 462 U.S. 151, 163, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476 (1983); *citing Republic Steel Corp. v. Maddox,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965); *cf. Clayton v. International Union, United Auto., Aerospace, and Agr. Implement Workers of America,* 451 U.S. 679, 101 S.Ct. 2088, 68 L.Ed.2d 538 (1981) (employee may not always be required to exhaust intra-union remedies); *Lueck,* 471 U.S. at 220, 105 S.Ct. at 1916; *LeBoutillier v. Air Line Pilots Ass'n Int'l,* 778 F.2d 883 (D.C.Cir.1985). The CBA represents a contract between plaintiff and Scrivner. This CBA provides plaintiff an avenue to challenge his discharge. *See* Article XIV of the CBA. Scrivner represents that plaintiff has filed a grievance but has not exhausted this process. Although plaintiff claims to have satisfied his administrative remedies and has received a right-to-sue notice from the EEOC, this fact alone does not obviate the requirement that plaintiff submit his claim to the grievance process mandated by the CBA. Plaintiff claims he has "opted out" of the

arbitration process for his ADA claims. No explanation is given that would permit this Court to conclude "opting out" of arbitration constitutes exhaustion of plaintiff's CBA remedies. Moreover, as plaintiff was terminated on November 1, 1992, and this action was commenced on October 4, 1993, it appears his suit may be time-barred for failure to initiate this litigation within six months of his termination. *See DelCostello,* 462 U.S. at 172, 103 S.Ct. at 2294.

### 2. *Disability Discrimination*

■ To establish a prima facie case of intentional disability discrimination under the ADA, the plaintiff must show (1) he timely filed a charge with the EEOC; (2) he is a "disabled person" under the ADA; (3) he was otherwise qualified for his job; and (4) he was terminated because of his disability. *Bolton,* 836 F.Supp. at 787–89; *U.S. EEOC v. AIC Sec. Investigation, Ltd.,* 820 F.Supp. 1060 (N.D.Ill.1993); *James v. Texas Dept. of Human Services,* 818 F.Supp. 987 (N.D.Tex. 1993); and *Kent v. Director, Missouri Dept. of Elementary and Secondary Educ. and Div. of Vocational Rehabilitation,* 792 F.Supp. 59 (E.D.Mo.1992).

### "Disabled Person"

■ To be "disabled" under the ADA requires that a person suffer "a physical or mental impairment that substantially limits one or more of the major life activities of such an individual." 42 U.S.C. § 12102(2)(A). *See also Welsh v. City of Tulsa,* 977 F.2d 1415 (10th Cir.1992). The undisputed evidence establishes that plaintiff represented under oath that he was not limited in his ability to work. *See* Deposition of Milton at pp. 36–38 and the records of the Oklahoma Securities Commission for Charles Milton, included as Ex. D to Scrivner's motion for summary judgment. Despite the possibility that plaintiff may suffer from some impairment that limits his ability to perform the job of order selector, this does not constitute a handicap under ADA. *Welsh* at 1419. However, plaintiff, like the plaintiff in *Bolton,* bears the burden "to demonstrate that he is disabled in some more general sense transcending his specific job, that his limitations

substantially impaired a major life activity in order to establish his prima facie case under the ADA." *Bolton* at 788. Accordingly, the Court finds that plaintiff has failed to establish a prima facie case for discrimination under the ADA as he was not a "disabled person."

### "Otherwise Qualified"

Under the ADA, a "qualified individual with a disability" is one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Plaintiff concedes that he is unable to satisfy the production standards for the order selector job. Plaintiff contends that with an accommodation he can perform under the new standards. However, plaintiff did not request Scrivner to make any accommodation prior to his termination. The accommodations plaintiff now suggest involve an alteration or reduction in the production standards as applied to plaintiff, designation of a work load for the plaintiff that is lighter than the ones for the other order selectors, or allowing plaintiff to bid for another job that he could perform.

■ The evidence establishes that the production standards constitute an essential function of the order selector job. Reallocation of job duties constitutes a change in the essential functions of the order selector job and is not required under the ADA. *See* 29 C.F.R. pt. 1630, app. to pt. 1630, Interpretive Guidance on Title I of the Americans with Disabilities Act, § 1630.2(*o*) (reasonable accommodation), and *Gilbert v. Frank,* 949 F.2d 637, 644 (2nd Cir.1991). To permit plaintiff to have a lighter work load than other order selectors would violate the provisions of the CBA. This fact is conceded by plaintiff. *See* Deposition of Milton at pp. 49–50. Plaintiff's request that he be permitted to transfer or bid for another job would also be adverse to the CBA.

### Intentional Discrimination

The Court has carefully examined the evidence before it and finds that plaintiff has failed to offer any evidence, either direct or

circumstantial, to support a finding of intentional discrimination.

A party resisting a motion for summary judgment must do more than make conclusionary allegations, he "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Dart Industries, Inc. v. Plunkett Co.*, 704 F.2d 496, 498 (10th Cir.1983); *see Lake Hefner Open Space Alliance v. Dole*, 871 F.2d 943, 946 (10th Cir.1989) (plaintiff did not "by affidavits or ... otherwise ... set forth *specific* facts showing that there is a genuine issue for trial." (emphasis supplied)). The mission of the summary judgment procedure is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Advisory Committee Note to Fed.R.Civ.P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine issue for trial'," and summary judgment can be granted. *Id.* at 587, 106 S.Ct. at 1356 (citation omitted). The burden on the moving party is only to point out that the records do not disclose a genuine issue on any material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2552. It is sufficient to discharge the moving party's burden by showing the record does not contain a material issue and point out the part of the record supporting the assertion. Where, as here, the non-moving party has the burden of proving at trial the material issues, then the moving party is not required to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.* at 323, 106 S.Ct. at 2553. It is enough to show "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325, 106 S.Ct. at 2554.

Once the moving party points out the absence of evidence to create a "genuine issue" of a "material fact" on which the non-moving party bears the burden of proof at trial, the Supreme Court imposes a burden on the non-moving party. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1356. The non-moving party must set forth specific facts showing there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. at 2510.

Defendant has supplied evidence that establishes a facially nondiscriminatory reason for its decision to terminate the plaintiff. "At the summary judgment stage, a plaintiff who does not produce specific evidence to create an issue of material fact is not allowed to avoid summary judgment and go forward to trial." *Bolton* at 836 F.Supp. at 789–93. At this point in the proceedings, conclusory allegations are insufficient.

### Conclusion

Accordingly, because plaintiff has failed to establish the necessary elements of a prima facie disability discrimination claim, defendant is entitled to judgment as a matter of law. Alternatively, plaintiff's claims are dismissed as they are pre-empted by federal labor law or barred by limitations, or are dismissed for failure to exhaust remedies. A judgment shall enter accordingly.

IT IS SO ORDERED.