**Gary MASSEY, Plaintiff,**

v.

**SCRIVNER, INC., Defendant.**

**No. Civ–93–1963–C.**

United States District Court, W.D. Oklahoma.

July 29, 1994.

1548

Rick W. Bisher, Boettcher & Ryan, George R. Lamb, Lamb & Lamb, Oklahoma City, OK, for Gary Massey.

Peter T. VanDyke, James C. Chandler, Lytle Soule & Curlee, Oklahoma City, OK, for Scrivner Inc.

### ORDER

CAUTHRON, District Judge.

This matter comes on for determination of defendant Scrivner, Inc.'s motion for summary judgment. Plaintiff has responded in objection and Scrivner has filed a reply brief. This matter is now at issue.

As an initial matter, plaintiff's response to Scrivner's motion for summary judgment purports to use several depositions and some interrogatories that were part of two cases

formerly pending in this district. These cases are *Bolton v. Scrivner, Inc.*, 836 F.Supp. 783 (W.D.Okla.1993), and *Milton v. Scrivner, Inc.*, 10 A.D.D. 534 (W.D.Okla.). Scrivner objects to plaintiff's use of unrelated litigation materials and seeks to strike them. Federal Rule of Civil Procedure 32(a)(4), provides that before evidence from other cases may be used in a case, it must be established that the actions involve the same subject matter and are between the same parties or their representatives or successors-in-interest. Plaintiff concedes that these materials are from other cases and suggests that this information may be used because it is sworn testimony and both cases are similar to those presented here.

■ The Court has read the reported decision in *Bolton* and the order issued in *Milton* and notes that counsel in both cases are the same as counsel in the present litigation. However, plaintiff offers no evidence to show that the excerpts from the depositions and interrogatories relate to issues common to either *Bolton* or *Milton*. The Court has reviewed the items of evidence taken in the other cases and concludes that even if allowed this material does not establish the existence of disputed material facts that preclude the entry of summary judgment. Therefore, the materials from unrelated litigation offered by plaintiff are stricken.

Plaintiff claims Scrivner terminated him in violation of the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and Oklahoma's public policy against disability discrimination. Both claims are based on a disparate treatment theory whereby Scrivner conspired to defraud plaintiff of employment-related rights and benefits created and protected by a Collective Bargaining Agreement ("CBA") between Scrivner and plaintiff's union, Teamsters Local No. 886.

The background facts are as follows. Scrivner, a wholesale grocery supplier, employed plaintiff as an order selector in the perishable department of its Oklahoma City warehouse. The order selector job is a physically demanding duty requiring repetitive lifting and handling of items weighing 50 pounds or more. Plaintiff's employment with Scrivner was subject to the terms of the CBA.

In 1992, Scrivner implemented new production standards for all order selector jobs. The new performance standards were implemented in accordance with the CBA's terms. Production standards define job tasks and fix an allotted amount of time in which the task must be performed. Plaintiff was terminated effective December 6, 1992, for failing to meet production standards. Plaintiff admits he could not meet the new production standards for his former job.

Plaintiff contends he suffers from disabilities as a result of on-the-job injuries and these disabilities prevent him from meeting the new production standards. When plaintiff failed to meet these new standards, he was terminated. Plaintiff states that he requested a specific job accommodation and Scrivner never replied. Plaintiff's conspiracy to commit fraud claim is based on alleged interference with CBA-protected seniority rights and deprivation of CBA-protected benefits. Plaintiff alleges a company-wide scheme to deprive all injured union employees of their CBA-protected seniority rights and benefits and that the intent underlying these actions was to violate both federal law and the CBA's terms. Plaintiff concedes that his employment was subject to a labor agreement requiring good cause for termination and plaintiff alleges Scrivner was motivated by an intent to violate the CBA and that plaintiff has not arbitrated his termination under the CBA's mandatory arbitration procedures.

Scrivner seeks summary judgment on alternative theories. First, Scrivner argues plaintiff's state law claims are preempted by federal law and that, to the extent the claims are not preempted they should be dismissed for plaintiff's failure to exhaust the CBA remedies prior to seeking relief in this Court. Alternatively, Scrivner contends plaintiff does not have standing to assert a public policy tort claim under Oklahoma law. Finally, Scrivner argues based on the undisputed evidence plaintiff cannot establish a prima facie case of intentional disability discrimination.

Although the Court will construe the facts and inferences drawn from the record before it in the light favoring the non-movant, "[e]ven under this standard there are cases where the evidence is so weak that the case does not raise a genuine issue of fact." *Burnette v. Dow Chemical Co.*, 849 F.2d 1269, 1273 (10th Cir.1988). The question in a case for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2511–12, 91 L.Ed.2d 202 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient." To defeat a motion for summary judgment, "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986), quoting from Fed.R.Civ.P. 1.

Scrivner argues plaintiff's claims are preempted by the National Labor Relations Act ("NLRA"), 29 U.S.C. § 151, *et seq.*, and the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1144(a). Plaintiff relies on *Burk v. K Mart Corp.*, 770 P.2d 24 (Okla.1989), *Sargent v. Central Nat. Bank & Trust Co.*, 809 P.2d 1298 (Okla.1991), and *Tate v. Browning Ferris, Inc.*, 833 P.2d 1218 (Okla.1992). These cases recognize that Oklahoma's remedy for employment discrimination may be broader than those provided by federal law.

In plaintiff's complaint he alleges federal question jurisdiction as a result of his ADA claim. Plaintiff alleges Scrivner's refusal to allow disabled employees to return to work violates and is a scheme to circumvent existing union contracts. Plaintiff also alleges that Scrivner employs part-time labor with fewer benefits and at a lower salary to circumvent union contracts.

Federal law provides employees have the right to engage in concerted activities for the purpose of collective bargaining. 29 U.S.C. § 157. Unfair labor practices are defined in 29 U.S.C. § 158 and include an employer's interference, restraint, or coercion of employees in the exercise of the rights recognized in § 157. The Court finds plaintiff's claims based on the interference with rights grounded in his CBA are "concerted activities" and covered by § 157 of the NLRA. *NLRB v. City Disposal Systems, Inc.*, 465 U.S. 822, 104 S.Ct. 1505, 79 L.Ed.2d 839 (1984). A lawsuit in state court alleging a violation of a provision of a labor contract must be brought under § 301 of the Labor Management Relations Act ("LMRA")., 29 U.S.C. § 141, *et seq.*, and must be resolved by reference to federal law. A state rule that purports to define the meaning or scope of a term in a contract suit therefore is preempted by federal labor law. *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 209–10, 105 S.Ct. 1904, 1910, 85 L.Ed.2d 206 (1985). Having found plaintiff's claims are concerted activities, this Court follows the conclusions reached in *Lueck* that "when resolution of a state law claim is substantially dependent upon analysis of the terms of an agreement made between the parties in a labor contract, that claim must either be treated as a § 301 claim, ... [citations omitted] or dismissed as preempted by federal labor-contract law." *Lueck*, at 220, 105 S.Ct. at 1915. *See also Saunders v. Amoco Pipeline Co.*, 927 F.2d 1154 (10th Cir.1991), *cert. denied*, 502 U.S. 894, 112 S.Ct. 264, 116 L.Ed.2d 217 (1991). Therefore, plaintiff's claims are pre-empted by federal labor law.

In addition, plaintiff has failed to establish a prima facie case of disability discrimination under the ADA. A plaintiff must show (1) he timely filed a charge with the EEOC; (2) he is a "disabled person" under the ADA; (3) he was otherwise qualified for his job; and (4) he was terminated because of his disability. *Bolton*, 836 F.Supp. at 787–89; *see also EEOC v. AIC Sec. Investigation*, 820 F.Supp. 1060 (N.D.Ill.1993); *James v. Texas Dep't of Human Servs.*, 818 F.Supp. 987 (N.D.Tex.1993); and *Kent v. Director, Missouri Dep't of Elementary & Secondary*

*Educ. and Div. of Vocational Rehabilitation,* 792 F.Supp. 59 (E.D.Mo.1992). To be "disabled" under the ADA requires that a person suffer "a physical or mental impairment that substantially limits one or more of the major life activities of such an individual." 42 U.S.C. § 12102(2)(A). *See also Welsh v. City of Tulsa,* 977 F.2d 1415 (10th Cir.1992). Plaintiff readily admits that he was not able to meet the new production standards implemented in 1982 as a result of certain on-the-job injuries he had sustained over the years. He claims that Scrivner's failure to offer him another job prior to his termination is evidence of disability discrimination. Despite the possibility that plaintiff may suffer from some impairment that limits his ability to perform the job of order selector this does not constitute a handicap under the ADA. *Welsh* at 1419. Plaintiff, like the plaintiffs in *Bolton* and *Milton,* bear the burden "to demonstrate that he is disabled in some more general sense transcending his specific job, that his limitations substantially impair a major life activity in order to establish his prima facie case under the ADA." *Bolton,* 836 F.Supp. at 788; *Milton,* Order at 4 (March ___, 1994). Accordingly, the Court finds plaintiff has failed to establish a prima facie case for discrimination under the ADA as he was not a "disabled person."

■ In addition, under the ADA, a "qualified individual with a disability" is one who "with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Plaintiff admits that he is unable to satisfy the production standards for the order selector job. However, he contends that with an accommodation he can perform under the new standards. However, the accommodation plaintiffs suggests involves an alteration or reduction in his duties as applied to him, designation of a workload for him that is lighter than with other employees similarly situated, or allowing him to bid for another unrelated job that he could perform. The law is clear on this issue that reallocation of job duties constitutes a change in the essential functions of his job and is not required under the ADA. *See* 29 C.F.R. pt. 1630, app. to pt. 1630, Interpretive Guidance on Title I

of the Americans With Disabilities Act, § 1630.2(*o*) (reasonable accommodation), and *Gilbert v. Frank,* 949 F.2d 637, 644 (2d Cir. 1991). To permit plaintiff to have a lighter workload than other order selectors would violate the provisions of the CBA, as would plaintiff's being permitted to transfer or bid for another job. In sum, plaintiff has failed to offer any evidence, either direct or circumstantial, to support a finding of intentional disability discrimination.

■ A party resisting a motion for summary judgment must do more than make conclusionary allegations, he "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e); *Dart Indus., Inc. v. Plunkett Co.,* 704 F.2d 496, 498 (10th Cir.1983); *see Lake Hefner Open Space Alliance v. Dole,* 871 F.2d 943, 946 (10th Cir.1989) (plaintiff did not "by affidavits or ... otherwise ... set forth *specific* facts showing that there is a genuine issue for trial." (emphasis supplied)). The mission of the summary judgment procedure is "to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (quoting Advisory Committee Note to Fed.R.Civ.P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine issue for trial,'" and summary judgment can be granted. *Id.,* at 587, 106 S.Ct. at 1356 (citation omitted). Under these circumstances, summary judgment can be granted. The burden on the moving party is only to point out that the records do not disclose a genuine issue on any material fact. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. It is sufficient to discharge the moving party's burden by showing the record does not contain a material issue and point out the part of the record supporting the assertion. Where, as here, the non-moving party has the burden of proving at trial the material issues, then the moving party is not required to "support its motion with affidavits or other similar materials *negating* the opponent's claim." *Id.,* at 323, 106 S.Ct. at 2553. It is enough to show "that there is an absence of

**1552**

evidence to support the nonmoving party's case." *Id.*, at 325, 106 S.Ct. at 2554.

■■■■ Once the moving party points out the absence of evidence to create a "genuine issue" of a "material fact" on which the non-moving party bears the burden of proof at trial, the Supreme Court imposes a burden on the non-moving party. The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1355. The non-moving party must set forth specific facts showing there is a genuine issue for trial. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248, 106 S.Ct. at 2510.

■■■ Scrivner has supplied evidence that establishes a facially nondiscriminatory reason for its decision to terminate plaintiff. Plaintiff simply failed to meet new production standards. "At the summary judgment stage, a plaintiff who does not produce specific evidence to create an issue of material fact is not allowed to avoid summary judgment and go forward to trial." *Bolton*, 836 F.Supp. at 789–93. At this point in the proceedings, the conclusory allegations are insufficient.

### Conclusion

In accordance with the foregoing, defendant Scrivner's motion for summary judgment is GRANTED. A separate judgment shall enter accordingly.

IT IS SO ORDERED.