Harmon E. WELSH, Plaintiff–Appellant,

v.

CITY OF TULSA, OKLAHOMA,
a municipal corporation,
Defendant–Appellee.

No. 91–5138.

United States Court of Appeals,
Tenth Circuit.

Oct. 23, 1992.

Laura Emily Frossard and D. Gregory Bledsoe, Tulsa, Okl., for plaintiff-appellant.

Neal E. McNeill, City Atty., Tulsa, Okl., for defendant-appellee.

Before LOGAN, EBEL, and KELLY, Circuit Judges.

EBEL, Circuit Judge.

Plaintiff Harmon E. Welsh appeals from a judgment dismissing his action against defendant City of Tulsa, Oklahoma (the City), for denying him employment as a firefighter.[1] He alleged claims under 29 U.S.C. § 794 (the Rehabilitation Act of 1973, or the Act), and 42 U.S.C. § 1983. The district court concluded that Welsh is not handicapped under the Act, and that he failed to submit evidence of discriminatory intent so as to establish an equal protection violation for purposes of § 1983. Welsh argues on appeal that both determinations are erroneous. While we resolve the § 1983 claim on somewhat different grounds, we affirm the district court's judgment.

The undisputed facts are as follows. Welsh applied for employment as a firefighter with the City. He completed all requirements for the application process, but was disqualified by the City's physician, Dr. Jeffrey Beal, due to a minor residual sensory deficit in the ring and little fingers of his right hand. Dr. Beal found that Welsh had a decreased sensation in these fingers to pin pricks and to hot and cold. Dr. Beal believed that this impairment would pose a potential risk for self-harm to Welsh if an ember dropped into his glove. Dr. Beal relied on Oklahoma Firefighters Pension and Retirement System Rule 2–2.13.2(c) that a candidate for the fire department should be rejected for "disturbances of sensation ... which are of such a nature or degree as to preclude the satisfactory performance of fire duties." Addendum to Appellant's Opening Br. at 18.

Following his rejection, Welsh obtained the opinions of two other physicians that the impairment would not interfere with his employment as a firefighter. Welsh claimed that the condition, which resulted from a 1976 accident, has not precluded him from being able to differentiate between hot and cold. He has never injured himself as a result of a lack of heat sensitivity, although he has worked on engines and been around hot machinery. He believed that a glove with a high-closed gauntlet and fire retardant glove liner and tape would have eliminated any possibility of hot embers entering the glove and working their way down to the area of alleged sensitivity. The City conceded that Dr. Beal erroneously applied the standards for employment as a firefighter by using "his explanation of the safety of the individual and the possibility of harm." Addendum to Appellant's Opening Br. at 21. However, the City maintained that Welsh nevertheless was not discriminated against on the basis of a handicap protected by the Rehabilitation Act of 1973 nor in a manner that gives rise to liability under § 1983.

The parties moved for summary judgment. A magistrate judge recommended that the City's motion be granted as to the Rehabilitation Act claim, but that both parties' motions be denied as to the § 1983 claim. The district court agreed with the recommendation as to the Rehabilitation

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

Act claim, but decided to grant the City's motion as to the § 1983 claim as well.

We review the grant of a summary judgment de novo. *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir.1990). Summary judgment is appropriate if "there is no genuine issue as to any' material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Neither party identifies any factual disputes. We therefore determine whether the City was entitled to a judgment as a matter of law.

The Act prohibits programs receiving federal financial assistance from discriminating against handicapped persons solely because of that handicap.[2] 29 U.S.C. § 794(a). A handicapped person is defined as one who "(i) has a physical or mental impairment which substantially limits one or more of such person's major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 29 U.S.C. § 706(8)(B). "Major life activities" means "functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 45 C.F.R. § 84.3(j)(2)(ii). "Is regarded as having such an impairment" means:

(A) has a physical ... impairment that does not substantially limit major life activities but that is treated by a recipient [of federal funds] as constituting such a limitation; (B) has a physical ... impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or (C) has none of the impairments defined in paragraph (j)(2)(i) of this section but is treated by a recipient as having such an impairment.

45 C.F.R. § 84.3(j)(2)(iv).

Welsh argues that he is handicapped under the Act because he was perceived by the City as having an impairment that substantially limits his ability to work as a firefighter. The City responds, and the

district court concluded, that denial of a single job in a single field due to a physical condition does not establish that a person is perceived as having an impairment that substantially limits a major life activity.

The question of who is a handicapped person under the Act is decided on a case-by-case basis. *Forrisi v. Bowen*, 794 F.2d 931, 933 (4th Cir.1986). The definition of a handicapped person has two elements: first, that one has, has a record of having, or is regarded as having a physical or mental impairment; and second, that that impairment substantially limits one or more major life activities.

As to the first element, a "physical impairment" under the Act means:

[A]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine[.]

45 C.F.R. § 84.3(j)(2)(i). The district court did not decide whether Welsh's condition constituted a physical impairment under the Act. We need not decide this question because we agree with the district court that the condition fails to satisfy the second element of the test.

As to the second element, "[t]he statutory language, requiring a *substantial* limitation of a *major* life activity, emphasizes that the impairment must be a significant one." *Forrisi*, 794 F.2d at 933–34. While the regulations define a major life activity to include working, this does not necessarily mean working at the job of one's choice. *Tudyman v. United Airlines*, 608 F.Supp. 739, 745 (D.Cal.1984). Several courts that have addressed the issue have decided that "an employer does not necessarily regard an employee as handicapped simply by finding the employee to be incapable of satisfy-

---

2. Because the court concluded that Welsh is not handicapped, it did not address whether the City fire department was a program receiving federal financial assistance such that the Act would apply to it.

ing the singular demands of a particular job." *Forrisi*, 794 F.2d at 934.

For example, in *Jasany v. United States Postal Service*, 755 F.2d 1244 (6th Cir. 1985), an employee was notified he was to be discharged after he suffered health problems due to a mild case of strabismus, or crossed eyes, while working on a machine. He filed a claim under the Act. While it was undisputed that Jasany's strabismus qualified as a physical or mental impairment, *id.* at 1248, the court concluded that Jasany failed to show this impairment substantially limited one or more major life activities. *Id.* at 1250. The parties stipulated that Jasany's condition never had any effect on any of his activities, including past work and ability to carry out other duties at the post office apart from operation of the machine that he had been working on when he developed his health problems. *Id.* The court noted that "an impairment that interfered with an individual's ability to do a particular job, but did not significantly decrease that individual's ability to obtain satisfactory employment otherwise, was not *substantially* limiting within the meaning of the statute." *Id.* at 1248.

Similar results were reached in *Maulding v. Sullivan*, 961 F.2d 694, 698 (8th Cir.1992) (alleged sensitivity to chemicals that prevented plaintiff from performing only lab work but did not substantially limit employment as a whole held not to be a handicap); *Daley v. Koch*, 892 F.2d 212, 214–16 (2d Cir.1989) (personality traits of poor judgment, irresponsible behavior, and poor impulse control held not to substantially limit major life activities where they were perceived as disqualifying employee from only position of police officer); *Forrisi*, 794 F.2d at 934–35 (acrophobia, or fear of heights, held not to substantially limit major life activities where employer viewed condition as limiting only employee's ability to perform one position at one plant); *Elstner v. Southwestern Bell Telephone Co.*, 659 F.Supp. 1328, 1343 (S.D.Tex.1987) (while employee's knee problem constituted an impairment, it did not substantially limit his major life activities in that it only limited his ability to work at jobs requiring pole

climbing), *aff'd*, 863 F.2d 881 (5th Cir.1988); and *Tudyman*, 608 F.Supp. at 746 (being overweight does not substantially limit major life activity where it disqualified employee from only one position).

*See also Cook v. State of R.I., Dep't of Mental Health, Retardation & Hosps.*, 783 F.Supp. 1569, 1574 (D.R.I.1992) (person not deemed handicapped simply because he or she is "unable to perform one particular type of job requiring specific physical characteristics or skills." Physical condition must place "individual so far outside the norm as to make it impossible or unusually difficult ... to perform work that could be done by most other people."). *But see Taylor v. United States Postal Serv.*, 946 F.2d 1214, 1218 (6th Cir.1991) (court rejects per se rule that would never permit "unsuccessful job applicant to prove he was perceived as being handicapped by pointing to the fact he did not possess a so-called job requirement due to a physical impairment").

Welsh attempts to distinguish *Daley* and *Tudyman* on the grounds that the plaintiffs in those cases lacked certain job requirements, while Welsh had all the necessary requirements for the job of firefighter. This is a meaningless distinction. The relevant question in those cases was whether a physical or mental condition that resulted in the plaintiffs' rejection from employment substantially limited one or more major life activities, *Daley*, 892 F.2d at 215–16; *Tudyman*, 608 F.Supp. at 745–46, not whether those plaintiffs had all the necessary job qualifications.

Welsh further attempts to distinguish *Daley* and *Tudyman* on the grounds that the plaintiffs in those cases did not have an impairment as defined by the Act. Whether *Daley* and *Tudyman* could have been decided solely on the ground that the plaintiffs did not have impairments as defined in the Act is irrelevant; these cases analyzed the facts to determine whether the plaintiffs' conditions substantially limited a major life activity. In any event, the plaintiffs in *Jasany*, 755 F.2d at 1248, and *Elstner*, 659 F.Supp. at 1342, were determined to have impairments as defined in the Act.

Welsh notes that the Supreme Court's holding in *School Board of Nassau County v. Arline*, 480 U.S. 273, 281, 107 S.Ct. 1123, 1127, 94 L.Ed.2d 307 (1987), that a teacher with tuberculosis was handicapped under the Act, did not rest on a determination that she was unable to obtain employment in any field other than teaching. The *Arline* court noted that she suffered tuberculosis " 'in an acute form in such a degree that it affected her respiratory system,' and [she] was hospitalized for this condition." *Id.* (quoting App. 11). The Court concluded that the fact that the teacher's impairment was serious enough to require hospitalization was "more than sufficient to establish that one or more of her major life activities were substantially limited by her impairment." *Id.* Thus, the Court was not presented with the question posed in this case.

█ We agree with the above-cited decisions that an impairment that an employer perceives as limiting an individual's ability to perform only one job is not a handicap under the Act. Any other interpretation would render meaningless the requirement that the impairment *substantially* limit a *major* activity. "It was open to Congress to omit these limiting adjectives, but Congress did not do so." *Forrisi*, 794 F.2d at 934.

█ Several factors are relevant to determining whether an impairment substantially limits an individual's employment potential. They include "(1) the number and type of jobs from which the impaired individual is disqualified, (2) the geographical area to which the individual has reasonable access, and (3) the individual's job expectations and training." *Jasany*, 755 F.2d at 1249 (numbering added).

Welsh requests that we remand the case because the district court did not discuss these factors. He notes that as to the first and second factors, he presented evidence that Dr. Beal sought to apply the statewide criteria for firefighters, raising the possibility that other fire departments would also disqualify him. As to the third factor, he notes he presented evidence that he had a lifelong goal of becoming a firefighter

and had obtained a college degree in Safety with the specific goal of becoming a firefighter.

At trial, Welsh would have the burden to prove that he had an impairment that substantially limited a major life activity. *Id.* Thus, to avoid summary judgment against him, he was obligated to come forward with " 'specific facts showing that there is a genuine issue for trial' " on this matter. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(e)). We conclude that the evidence identified by Welsh does not satisfy the *Celotex* burden. His assumption that other fire departments would also misapply the standards regarding employment of firefighters so as to disqualify him is only speculation. He failed to present evidence like the vocational expert's opinion in *Scharff v. Frank*, 791 F.Supp. 182, 187 (S.D.Ohio 1991), that the plaintiff would be precluded from performing not only the specific job for which she applied, but a wide range of jobs, if her ability to perform physical tasks was limited in the manner described by the defendant.

Additionally, Welsh did not show that his degree in Safety qualified him solely for the position of firefighter. Finally, while we do not question the sincerity of Welsh's desire to become a firefighter, that desire, alone, is insufficient to bring him within the definition of a handicapped individual under the Act. Diminished sensory perception in two fingers simply is not an impairment that satisfies the test for handicap under the Act. We conclude the district court did not err in granting the City's motion for summary judgment on Welsh's Rehabilitation Act claim.

The district court dismissed the § 1983 claim, which was based on an equal protection violation, after concluding that Welsh failed to present any evidence of discriminatory intent. "[T]he requirements for establishing a § 1983 claim are the same as those for establishing the underlying constitutional ... violations, ... and purposeful discrimination is an essential element of an equal protection violation." *Lewis v.*

*City of Fort Collins,* 903 F.2d 752, 755 n. 1 (10th Cir.1990) (citations omitted). " 'Discriminatory purpose,' however, implies more than intent as volition or intent as awareness of consequences." *Personnel Adm'r v. Feeney,* 442 U.S. 256, 279, 99 S.Ct. 2282, 2296, 60 L.Ed.2d 870 (1979). Rather, it implies that a decisionmaker "selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* (footnote omitted).

The City contends that it did not intend to discriminate; rather, at worst, Dr. Beal made an error in judgment. An error in judgment as to an individual's particularized capabilities is not discrimination based upon group or class characteristics, particularly as to a group so diverse and amorphous as the physically handicapped. However, even assuming that the City did intend to disqualify Welsh because he was a member of a handicapped class, for purposes of equal protection analysis the handicapped do not constitute a suspect class. *DeVargas v. Mason & Hanger–Silas Mason Co.,* 844 F.2d 714, 725 (10th Cir.1988). Welsh concedes that there is no fundamental constitutional right to government employment. Thus, the City's policy denied Welsh equal protection only if it was not rationally related to the City's legitimate goals. *See id. See also Lussier v. Dugger,* 904 F.2d 661, 671 (11th Cir.1990) (analyzes under rational relationship test whether termination of handicapped employee violated equal protection clause).

The City has a legitimate goal of selecting as firefighters those applicants who are most capable of performing the job. When the number of qualified applicants exceeds the number of available jobs, an employer does not act irrationally by choosing an applicant who does not need any special accommodations over one who does.[3] Welsh could perform the job of firefighter, but only with special accommo-

dations. Nothing in the United States Constitution requires the City to accommodate Welsh's condition. The City's decision not to hire him was rationally related to a legitimate goal. The district court correctly granted the City's motion for summary judgment on the § 1983 claim.

The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.

---

3. Of course, such a decision may violate the Rehabilitation Act. "The mere fact that the [employer] acted in a rational manner is no defense to an act of discrimination [under the Act]." *Pushkin v. Regents of Univ. of Colo.,* 658 F.2d 1372, 1383 (10th Cir.1981). Because we have determined that Welsh is not handicapped under the Act, we need not decide whether the City's failure to accommodate him violated the Act.