United States Court of Appeals,

Fifth Circuit.

No. 95-30756.

Cortez T. BRIDGES, Plaintiff-Appellant,

v.

CITY OF BOSSIER, Defendant-Appellee.

Aug. 22, 1996.

Appeal from the United States District Court for the Western District of Louisiana.

Before GARWOOD, HIGGINBOTHAM and BENAVIDES, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant Cortez Bridges (Bridges) appeals the district court's judgment, following a bench trial, denying his claim of discrimination under the Americans with Disabilities Act (ADA). We affirm.

**Facts and Proceedings Below**

Bridges applied for a firefighter position in Bossier City, Louisiana (the City). After passing certain preliminary tests, he was directed to undergo a physical exam. On the medical history form, he revealed to Dr. Mark Wilson that he has a blood clotting disorder known as Factor IX Deficiency, a mild form of hemophilia. Bridges told Dr. Wilson that he had never suffered any serious complications from the blood disorder. After contacting Bridges' family physician and his hematologist, Dr. Wilson recommended that the City reject Bridges' application because of the extreme risk of severe trauma associated with being a firefighter. The City rejected Bridges because it feared his condition rendered him a danger to himself and others as a firefighter.

Bridges sued the City under the ADA. In a bench trial before the district court, Bridges presented evidence that he has never suffered any severe complications because of the hemophilia. This is true even though he played competitive contact sports in high school, currently serves in the Louisiana National Guard, and is now employed as an emergency medical technician (EMT) at a local

casino. According to Bridges, the City failed to conduct an individualized assessment of his ability to work as a firefighter, acting instead on "myths, fears, and stereotypes" about hemophilia.[1] Bridges claims that, despite the fact that he could actually perform the job of firefighter, the City refused to hire him because it regarded him as being disabled. The City's refusal to hire him as a firefighter also results in Bridges' being ineligible to work for the City as an EMT or paramedic. In response, the City argues that, though it refused to hire Bridges because of his hemophilia, it did not regard him as having a "disability" as that term is defined under the ADA.

The district court found that the City regarded Bridges only as being disqualified from jobs involving "routine exposure to extreme trauma" and that such employment constitutes a "narrow range of jobs." Thus, the district court concluded that Bridges failed to prove that he was disabled under the ADA because the City did not regard him as having a substantially limiting impairment on his ability to work. Bridges appeals, and the United States filed a brief as *amicus curiae* in support of Bridges' appeal.

### Discussion

This case presents mixed questions of law and fact, requiring varying standards of review. *Reich v. Lancaster,* 55 F.3d 1034, 1044-45 (5th Cir.1995). We review the district court's factual findings only for clear error, while its legal conclusions are reviewed *de novo. Id.*

The ADA prohibits discrimination by an employer on the basis of a person's disability. 42 U.S.C. § 12112. Thus, one requirement for a plaintiff to prevail on an ADA claim is to establish that he has a disability. *Rogers v. International Marine Terminals, Inc.,* 87 F.3d 755, 758 (5th Cir.1996). It is undisputed that Bridges suffers from a mild form of hemophilia and that the City refused to hire him as a firefighter because of this condition. What is in dispute is whether Bridges suffers from a

---

[1]Bridges testified that Dr. Wilson stopped his physical examination immediately when Bridges advised him of his hemophilia condition. Dr. Wilson testified that he conducted a complete exam of Bridges and conducted research regarding hemophilia prior to deciding to recommend that the City reject Bridges's application. We assume that the district court resolved this conflict in the evidence consistent with its judgment and express findings, and hence in favor of Dr. Wilson's testimony. Such a resolution is not clearly erroneous.

"disability" as that term is defined under the ADA.

The statutory definition of "disability" includes "being regarded as having [a physical or mental impairment that substantially limits one or more of the major life activities]." *See* 42 U.S.C. § 12102(2)(C).[2] One is regarded as having a substantially limiting impairment if the individual (1) has an impairment which is not substantially limiting but which the employer perceives as constituting a substantially limiting impairment; (2) has an impairment which is substantially limiting only because of the attitudes of others toward such an impairment; or (3) has no impairment at all but is regarded by the employer as having a substantially limiting impairment. *See Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 727-28 n. 19 (5th Cir.1995) (quoting 29 C.F.R. § 1630.2(*l* )(1)-(3)). We analyze Bridges' claim under the first definition of "regarded as"—that his impairment is not substantially limiting but that the City perceived it as such.[3] *See Rogers,* 87 F.3d at 758; *Dutcher,* 53 F.3d at 727 & n. 19 (citing definition set forth in 29 C.F.R. § 1630.2(*l* )(1)).

Although the ADA does not define "substantially limits" or "major life activities," the regulations promulgated by the EEOC "provide significant guidance." *Dutcher,* 53 F.3d at 726. The EEOC regulations state that "[m]ajor [l]ife [a]ctivities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Working is the only major life activity in which Bridges claims the City regarded him as substantially limited. For the major life activity of working, the EEOC regulations provide that

> "[t]he term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills, and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working." 29

---

[2]Bridges does not claim that his mild hemophilia actually substantially limits one or more major life activities. Instead, he asserts that the City regarded him as having a substantially limiting impairment. *See* 42 U.S.C. § 12102(2)(C).

[3]Bridges claims that he falls under the third Equal Employment Opportunity Commission (EEOC) definition of "regarded as"—that he has no impairment at all but that the City regarded him as having a substantially limiting impairment. It is clear, however, that hemophilia is an "impairment." *See Ellison v. Software Spectrum, Inc.,* 85 F.3d 187, 190 n. 1 (5th Cir.1996) (quoting regulations promulgated by the EEOC defining physical impairment to include, *inter alia,* any physiological condition affecting the hemic body system).

C.F.R. § 1630.2(j)(3)(i).

On appeal, Bridges argues that the district court erred by holding that the City regarded him as substantially limited in only a narrow range of jobs. The district court's finding of the City's perception—that Bridges' hemophilia substantially limits him only in jobs involving "routine exposure to extreme trauma"—is a finding of fact subject to clearly erroneous review. We do not understand Bridges to argue that the district court's finding of the City's perception is clearly erroneous. Even if his argument is interpreted to so dispute this finding, there is ample record evidence to support it.[4]

We next address the question of whether the district court erred in holding that the limitation as perceived by the City—that Bridges cannot perform any job in which he is routinely exposed to extreme trauma—substantially limits him only in a narrow range of jobs. This is a mixed question of law and fact. The underlying factual question is how many and which jobs involve routine exposure to extreme trauma. On appeal, Bridges lists the following jobs as involving routine exposure to extreme trauma: law enforcement, military service, EMT, paramedic, construction worker, manufacturing and machinery processing jobs, saw mill employees, quarry workers, and jobs in the

---

[4]Bridges does argue that the City misunderstood his mild form of hemophilia and believed that he was subject to spontaneous bleeding. Dr. Wilson testified that he rejected Bridges not because he feared spontaneous bleeding—he did not—but because he believed Bridges was at increased risk for excessive bleeding with any trauma. This belief was supported by Bridges' hematologist.

There is a multitude of record evidence regarding the City's belief in the routine and extreme trauma suffered by firefighters. For example, Dwayne Connella, the emergency medical services supervisor for the City's fire department and a career firefighter, testified that when firefighters enter a structure fire, often they are unable to see, hear, or smell, and that they crawl along the walls to maintain a reference point while continuously sweeping their arms and legs in attempts to locate injured victims. He further testified that firefighters must move as quickly as possible to save lives, and, thus, that firefighters trying to locate victims in an atmosphere of no visibility often must "lead with [their] head[s]." The City also presented evidence of specific trauma that its firefighters have sustained. There is evidence that the City's firefighters have fallen through ceilings and floors and from roofs and ladders, have been struck by falling televisions, tables, chests of drawers, bar bells, and ceiling joists, and have been knocked around by an over-pressurized fire hose. And, in contrast to when similar injuries are received in other jobs, the City presented evidence that firefighters do not have the luxury of seeking immediate medical treatment because every minute counts in saving lives during a fire. Whether or not the actual trauma encountered by firefighters is quite so routine or severe, this is sufficient evidence to sustain the district court's finding of the City's good faith, actual *perception* that firefighters routinely encounter extreme trauma in their jobs.

4

iron and steel industry.  The district court made no explicit findings of fact regarding which jobs,

other than firefighting, did or did not involve routine exposure to extreme trauma.  Nevertheless, we

can rule out most of the jobs listed by Bridges because of a lack of record evidence.  Bridges points

to no record evidence that law enforcement personnel are routinely exposed to extreme trauma, and

we find none.  Neither does the record evidence support his contention that construction workers,

manufacturing and machinery processing employees, saw mill or quarry workers, employees in the

iron and steel industry, or military personnel are routinely exposed to extreme trauma.[5]  Nor does the

record evidence mandate a finding that EMTs and paramedics are routinely exposed to extreme

trauma.[6]

---

[5]Bridges points to testimony by Jack Madley (Madley), who was qualified as an expert safety engineer for the purpose of assessing and comparing the risk of firefighting with the risks involved in other jobs, as evidence that these types of workers are routinely exposed to extreme trauma. Madley reviewed the City firefighters' workers' compensation claim records and compared them to national studies.  According to Madley, a large number of workers' compensation injuries occurred at the fire station and are not directly related to firefighting.  Madley compared the workers' compensation rates of firefighters to higher compensation rates of stone quarry workers, saw mill workers, and iron and steel erection workers.  Madley concluded from this data "[t]hat the insurance carriers think that if you work in the iron and steel erection [business] you're in a much more hazardous job than if you're a fire fighter."  Even if workers' compensation claims are considered reliable measures of incidents of trauma—and there was evidence that firefighters often do not file compensation claims when they suffer trauma—none of Madley's evidence addressed variations in trauma.  For Madley's purposes, no differentiation was made between incidents involving minor trauma and those involving extreme trauma.  Consequently, his testimony does not support a finding that any particular job has "routine exposure to extreme trauma."

Bridges also points to his own testimony about his experience as a member of a Bradley Fighting Vehicle (BFV) team in the Louisiana National Guard.  Bridges testified that soldiers get "bruised and banged and knocked around" a lot while riding in BFVs.  He also testified that soldiers who handle the weapon system in BFVs get nicks and bruises on their fingers from loading and unloading the system.  This is not evidence sufficient to support a finding that military personnel in general are routinely exposed to extreme trauma.  *Cf. Chandler v. City of Dallas,* 2 F.3d 1385, 1393 (5th Cir.1993), *cert. denied, --- U.S. ----,* 114 S.Ct. 1386, 128 L.Ed.2d 61 (1994).

[6]Bridges points to testimony by Dwayne Connella and Chief Wallace to support his argument that emergency medical services employees are routinely exposed to extreme trauma.  In response to a question about what one does as a *firefighter* or a *driver of the fire truck* or as *captain of the firefighters,* Connella testified that people tend to get banged around inside of a fire truck and in an ambulance.  This is not direct evidence of trauma to which EMTs and paramedics are exposed. Chief Wallace testified that emergency medical service personnel are at risk of trauma because they can easily lose their footing while ambulances are in motion.  Chief Wallace also testified,

The legal issue presented by the instant case is whether disqualification from jobs involving routine exposure to extreme trauma—such as firefighter—constitutes a substantial limitation on the major life activity of working. Because we agree with the district court that such jobs are merely a narrow range of jobs, we hold that one who is disqualified from holding such jobs is not disabled under the ADA.

The parties focus their arguments on the EEOC regulations. Bridges first argues that the City's perception would substantially limit him in a broad range of jobs. *See* 29 C.F.R. § 1630.2(j)(3)(i). The City argues that it regards him as limited in only a narrow range of jobs. It is clear that neither firefighters alone, nor even firefighters in conjunction with municipal EMTs and paramedics who must also serve as backup firefighters (see note 9, *infra* ), constitutes a broad range of jobs of various classes. A "broad range" implies more than two job types. *See* 29 C.F.R. Pt. 1630.2(j), App. (listing an allergy to a substance found in most high rise office buildings within the plaintiff's geographical area that makes it difficult to breathe as an example of a substantially limiting impairment on a broad range of jobs). This Court has favorably cited *Daley v. Koch,* 892 F.2d 212, 215 (2d Cir.1989),[7] which held that a perceived impairment that prevented a plaintiff from becoming a New York City police officer affected only a "narrow range of jobs," even though New York City alone employs over 27,000 police officers. *See Chandler,* 2 F.3d at 1392 & n. 29. Similarly, a limitation that prevents one from becoming a firefighter—or even a firefighter and associated municipal paramedic or EMT backup firefighter—also only affects a "narrow range of jobs."

It is an issue of first impression in this Circuit whether such jobs constitute a "class" of jobs

however, that the emergency medical service environment is more controlled than firefighting because firefighters often have a visibility of merely inches. The dangers described in note 4, *supra,* are obviously not associated with EMT or paramedic employment *per se* where not combined with the role of backup firefighter (see note 9, *infra* ).

[7]While *Daley* is a Rehabilitation Act case, not an ADA case, the ADA defines a disability substantially the same as does the Rehabilitation Act. *Chandler,* 2 F.3d at 1391. Consequently, Rehabilitation Act cases are persuasive on questions regarding what constitutes a disability under the ADA.

under 29 C.F.R. § 1630.2(j)(3)(i).[8] A class of jobs includes "jobs utilizing similar training, knowledge, skills or abilities, within that geographical area...." *See* 29 C.F.R. § 1630.2(j)(3)(ii)(B). Bridges and *amicus curiae* argue that exclusion from one's chosen field of employment is a substantial limitation on the ability to work because a chosen field is a "class of jobs." There is some support for this position. The Fourth Circuit has suggested that a plaintiff whose impairment "foreclosed her generally from obtaining jobs in her field" would be substantially impaired. *Gupton v. Commonwealth of Virginia,* 14 F.3d 203, 205 (4th Cir.), *cert. denied,* --- U.S. ----, 115 S.Ct. 59, 130 L.Ed.2d 17 (1994). But this language was *dicta* because the plaintiff in *Gupton* was prevented from proving a substantial impairment by the fact that she was offered a similar position (highway utilities specialist) by the state in another office. *Id.; see also Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1126 (11th Cir.1993) (assuming in *dicta* that fire department's "no-beard rule" substantially limited the ability of people with a certain skin condition to work as firefighters); *Forrisi v. Bowen,* 794 F.2d 931, 935 (4th Cir.1986) (suggesting in *dicta* that an employer regards an employee as substantially impaired under the Rehabilitation Act if the impairment generally prevents employment in his chosen occupation of utility repairman); *E.E. Black, Ltd. v. Marshall,* 497 F.Supp. 1088, 1101 (D.Haw.1980) (asserting in *dicta* that if an applicant is disqualified from an entire field, such disqualification constitutes a substantial handicap to employment under the Rehabilitation Act).

The Tenth Circuit addressed a similar question in *Welsh v. City of Tulsa, Oklahoma,* 977 F.2d 1415, 1416-1420 (10th Cir.1992) (Rehabilitation Act case). The Court in *Welsh* stated that the plaintiff failed to show that he was substantially limited in a major life activity merely because he

---

[8]Bridges did not argue to the district court or in his initial brief in this Court that firefighting, or firefighting plus paramedics and EMTs, is a "class of jobs." The *amicus curiae* first raised the issue in its initial brief. To the extent that this "class of jobs" argument presents us a purely legal issue, we hold that Bridges has not waived this variation on his legal argument that the district court erred in holding that the City did not regard him as substantially limited in his major life activity of working. *See Carmon v. Lubrizol Corp.,* 17 F.3d 791, 794 (5th Cir.1994) (noting that issues should be liberally construed); *Corrosion Proof Fittings v. Environmental Protection Agency,* 947 F.2d 1201, 1208 (5th Cir.1991) (court can consider different arguments raised by *amicus curiae* on issues raised by appellant). But to the extent Bridges complains about any lack of specific findings or lack of specific evidence directed to the "class of jobs" question, his failure to raise that below waives any such complaint.

could not work as a fireman. *Id.* We find *Welsh* persuasive: firefighters alone do not constitute a "class of jobs."[9] *See also Chandler,* 2 F.3d at 1393; *Daley v. Koch,* 892 F.2d 212, 215-16 (2d Cir.1989); *but see Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1125-27 (11th Cir.1993) (assuming in *dicta,* without discussing the issue, that those desiring to be firefighters would be substantially impaired in a major life activity if they were prevented from working as firefighters).

Similarly, the Tenth Circuit has suggested that preemption from employment in one's chosen field does not *per se* establish a substantial limitation on working. *See Bolton v. Scrivner, Inc.,* 36 F.3d 939, 942 (1994) (applying Rehabilitation Act precedent that "working" as a major life activity "does not necessarily mean working at the job of one's choice"); *see also Welsh,* 977 F.2d at 1418-19 (plaintiff not substantially limited where sensory deficit prevented him from becoming fireman); *Daley,* 892 F.2d at 215-16 (person not substantially limited in major life activity of working merely because he is prevented from working as a police officer); *cf. Tudyman v. United Airlines,* 608 F.Supp. 739, 745-46 (D.C.Cal.1984) (concluding that weight problem that prevents plaintiff from working as a flight attendant for particular airline does not substantially limit the major life activity of working).[10] We find the approach of the Tenth Circuit closer to our understanding of a substantial

---

[9]There is no discussion in *Welsh,* however, of being excluded from an entire class of jobs; it merely discusses being excluded from the particular job of firefighter. *Id.* We also recognize that *Welsh* is distinguishable from the instant case because the plaintiff's impairment (decreased sensations in two fingers) in that case was not alleged to have any effect on any job other than actual firefighter. *Id.* Here, it is clear that disqualification from the job of firefighter also acted as a disqualification from the jobs of EMT and paramedic with the City because the City has a rule requiring all EMTs and paramedics to be firefighters as well. The *amicus curiae* argues in substance that this rule should be imputed to all employers. The City's rule, however, is not based on any perception that Bridges' impairment prevents him from working as an EMT or paramedic. The record shows that the rule was implemented for two reasons: the City (1) wants these people to serve as backup firefighters, and (2) believes that the Fair Labor Standards Act allows employers to require firefighters (and EMTs and paramedics who are also firefighters) to work 56-hour weeks without overtime pay. There is no evidence that EMTs or paramedics *generally* must be firefighters, and, in fact, Bridges is currently employed as an EMT. Because it is not based on the City's perception of Bridges' impairment, we will not impute the City's rule-based disqualification from working for it as an EMT and paramedic to other employers.

[10]The appendix to the regulations is unclear on this point. *Compare* 29 C.F.R. Pt. 1630.2(j), App. (discussing what constitutes a "class of jobs" and giving example of one who cannot perform any heavy labor); to *id.* (noting that professional baseball player who can no longer play because of injured elbow is not substantially limited in his ability to work); to *id.* stating that one who

limitation on the major life activity of working. Thus, we hold that firefighting jobs—including firefighters and associated municipal paramedics or EMTs who must also serve as backup firefighters—is too narrow a field to describe a "class of jobs" under 29 C.F.R. § 1630.2(j)(3)(i).[11]

## Conclusion

For the foregoing reasons, we AFFIRM the district court's judgment in favor of the City.

AFFIRMED.

---

could not work as commercial airline pilot but who could work as commercial airline co-pilot is not substantially impaired).

[11]We reject Bridges' two other arguments, as well. First, we disagree that hemophilia is a disability *per se.* The appendix to the ADA regulations emphasizes individualized determinations of disability. 29 C.F.R. Pt. 1630.2(j), App. ("The determination of whether an individual has a disability is not necessarily based on the name or diagnosis of the impairment that person has, but rather on the effect of that impairment on the life of the individual."). While this interpretive guideline to the ADA indicates a few diseases that constitute ADA disabilities *per se* (i.e. HIV and insulin-dependent diabetes), hemophilia is not listed. *Id.* This failure to list hemophilia as a disability *per se,* combined with the focus on individualized assessments, leads us to the conclusion that hemophilia is not a disability *per se* under the ADA. Second, we note that for Bridges to prevail on his claim that the City acted on "myths, fears, and stereotypes," he would still need to prove that the City regarded him as substantially disabled. *See* 29 C.F.R. Pt. 1630.2(*l* ), App. (discussing myths, fears, and stereotypes as potentially disabling under the "regarded as" prong of the definition of disabled).