### Robert L. AMOS, Plaintiff,

v.

### WHEELABRATOR COAL SERVICES, INC., Defendant.

### No. Civ.A. 2:97–CV–004–J.

United States District Court, N.D. Texas, Amarillo Division.

Dec. 4, 1998.

Robert L Templeton, Templeton Smithee Hayes Fields & Young, Amarillo, TX, for plaintiff.

Kenneth E Broughton, Jr, Dean Joseph Schaner, Haynes & Boone, Houston, TX, for Wheelabrator Coal Services, Co., defendant.

Jeff Lane Blackburn, Law Office of Jeff Blackburn, Amarillo, TX, Kevin A. Isern, Law Office of Kevin A. Isern, Amarillo, TX, for International Broth. of Elec. Workers, Local 602, defendant.

## ORDER

MARY LOU ROBINSON, District Judge.

Plaintiff Robert L. Amos is a bulldozer operator working on a rotating shift for Defendant Wheelabrator Coal Services, Inc. He alleges that he was a disabled person under the Americans With Disabilities Act because he suffered from kidney disease and needed a non-rotating shift job both before and after a kidney transplant. He alleges that Wheelabrator violated the ADA by failing to accommodate him by creating a non-rotating shift job for him. Wheelabrator denies that Amos' major life activity of working was substantially impaired within the meaning of the ADA, and also contends that it could not reasonably accommodate Amos' requested work hours. The case was tried to a jury which returned a verdict for Plaintiff. The matter is now before the Court on Defendant's Motion for Judgment as a Matter of Law.

### Wheelabrator

Defendant Wheelabrator Coal Services, Inc. provides coal-handling services to Southwestern Public Service Company for SPS' electric generation facility in Amarillo, Texas. Wheelabrator provides coal to the utility company twenty-four hours per day, seven days a week, fifty-two weeks a year. Wheelabrator employees work un-

der a Collective Bargaining Agreement that provides for three rotating shifts. Each required seven straight days work followed by one, two or four days off depending on the shift. Four crews cover the three shifts. The agreement provides:

ARTICLE IV

GENERAL WORKING RULES AND CONDITIONS OF EMPLOYMENT FOR DEPARTMENTS COVERED BY THIS AGREEMENT

Section 1. ...

(d). The regular scheduled hours of work shall be in line with the shifts as noted below:

First Shift: 12 Midnight to 8:00 A.M.

Second Shift: 8:00 A.M. to 4:00 P.M.

Third Shift: 4:00 P.M. to 12:00 Midnight

(e). Where multiple shifts are worked, each crew will rotate on a continuous basis. On the daylight shift, work will be scheduled as seven (7) consecutive days worked with one day off. On the evening shift, work will consist of seven (7) consecutive days worked with two (2) consecutive days off. On the midnight shift, work will consist of seven (7) consecutive days worked with four (4) consecutive days off.

Both the period of four consecutive days off and the occasional weekend day off were highly prized by the rotating shift workers.

All but a few Wheelabrator employees work a rotating shift. No non-rotating shift job for which Plaintiff was qualified became available from the time Plaintiff requested a five day, days only, schedule until he returned to work on a rotating shift.[1]

**Plaintiff Amos**

During the 1990's, Plaintiff suffered from kidney-related medical problems. By July 30, 1993, Plaintiff required hemodialysis treatments three times per week. Three-hour dialysis treatments were scheduled for Mondays, Wednesdays, and Fridays from 6:00 to 9:00 p.m. The treatment center was closed on Saturday afternoons and Sundays. Post-dialysis recovery could take three to eight hours.

In late July 1993, Plaintiff informed Wheelabrator that effective immediately he would no longer be able to work rotating shifts because of his hemodialysis treatments. Plaintiff asked Wheelabrator to permit him to continue working as a dozer operator Monday through Friday only, 8:00 a.m. to 4:00 p.m. thus creating a five day, days-only shift with no weekend work for him. He repeated that request through letters from his doctors and attorney, both before and after he received a kidney transplant. There was no time limit on the requested accommodation.

By letter of July 30, 1993, his physician, Dr. Rios, wrote:

His hemodialysis treatment schedule has been established from 6:00 p.m. to 9:00 p.m. Mr. Robert Amos is capable and should be able to continue to work operating a dozer as he has been doing in the recent past if his work schedule can be accommodating [sic] from 8:00 a.m. to 4:00 p.m. Monday through Friday.

By letter of August 10, 1993 to the general manager of Wheelabrator, Amos' attorney repeated the request.

Robert Amos underwent kidney transplant surgery on April 21, 1994. On June 10, 1994, Dr. Inna Kogan, a psychiatrist, wrote:

Mr. Robert Amos underwent Kidney Transplant secondary to End–Stage Re-

---

1. Plaintiff contends that he should have been informed that the control room job became available in September 1997, and been permitted to bid on that job. The control room job, however, was a rotating shift job, and the bids closed September 19, 1997. Plaintiff at that time was still requesting a non-rotating shift job and had not been released by his physician for rotating shifts.

nal Disease. He also was diagnosed as having Generalized Anxiety Disorder and Panic Attacks.

Mr. Amos is highly recommended to keep working hours at no more than 40 hours per week. He is strongly advised not to have sliding shifts and to work no more than 8 hours per day from 8:00 a.m. to 4:00 p.m. shift.

His physician, Dr. Dickerman wrote on July 29, 1994:

Mr. Amos can return to work, August 1st, Monday through Friday, hours 8:00 A.M. to 4:00 P.M. only, due to the fact that he must have his medication at that time.

On April 20, 1995, Dr. Dickerman wrote:

Mr. Robert Amos had a kidney transplant on 4–31–94. He is doing quite well post kidney transplant. However, he has brought it to my attention that he has been asked to go on shift work at his job. Mr. Amos cannot do shift work. He must be on a regular schedule, Monday through Friday, with regular hours such as 8:00 – 4:00. The reason for this is, not only does this put too much stress on his body, but also he must take his medications on a regimented pattern. Some of his medicines are liquids that require precise measurements that would be very difficult to do in a work setting. His anti-hypertensive medications must be taken with food at certain times and these factors would make it very difficult to do on a rotating pattern. The maintenance of Mr. Amos' medications is essential in keeping his new kidney and not rejecting. There is no way he could work on a shift pattern that would be different every week.

On May 16, 1997, nearly four years after the initial request for a 5 day, days only schedule, Mr. Amos, through his attorney, wrote a letter to the Union saying that Mr. Amos would be willing to work the swing shift, but that he would not be able to rotate shifts. On May 27, 1997, Amos' attorney again wrote the Union this time saying that Amos would work the grave-yard shift if he could do it five days on and two days off, but stating that the most beneficial position for Amos and his family would be of some type of daytime maintenance position with five days on and two days off.

Plaintiff's physician released him for rotating shift work on October 31, 1997. Wheelabrator promptly returned him to work at dozer operator pay although he was briefly assigned other duties until he received drug clearance.

It is undisputed that Wheelabrator kept Plaintiff's job open during the four year period from 1993 until 1997, even though it engaged in reduction of force by attrition during 1997 and laid off six employees that year. After Plaintiff returned to work, Wheelabrator accommodated him by allowing him breaks to take his medication, allowing him to place his medication in a refrigerator and changing the lunch periods for his entire crew so that Plaintiff could timely take certain medications required to be taken with food. Plaintiff was still working a rotating shift at Wheelabrator at the time of trial.

Plaintiff was physically unable to work during only two periods; a period from July 21, 1993 to January 30, 1994 when he was on short-term disability, and a period from the date of his transplant surgery on April 21, 1994 to August 1, 1994. It is undisputed that except for those two periods, Plaintiff applied for, and was qualified for and physically able to do, a wide range of other jobs including heavy labor so long as those jobs did not involve rotating shifts. At the time he returned to work at Wheelabrator, he was employed by the street department of the City of Amarillo doing heavy labor.

## Legal Standards

A renewed motion for judgment as a matter of law is governed by Rule 50 of the Federal Rules of Civil Procedure. "A motion for judgment as a matter of law . . . in an action tried by jury is a challenge to the legal sufficiency of the evidence

supporting the jury's verdict." *Harrington v. Harris,* 118 F.3d 359, 367 (5th Cir. 1997), *cert. denied,* 504 U.S. ——, 118 S.Ct. 603, 139 L.Ed.2d 491 (1997) (internal citation omitted). The jury's verdicts is to be tested for sufficiency of the evidence under the standards set forth in *Boeing Co. v. Shipman,* 411 F.2d 365, 374 (5th Cir.1969) (*en banc*), *overruled on other grounds, Gautreaux v. Scurlock Marine, Inc.,* 107 F.3d 331 (5th Cir.1997) (*en banc*), viewing all the evidence and drawing all reasonable inferences in the light most favorable to the verdict. *Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 993 (5th Cir.1996) (*en banc*) (quoting *Boeing,* 411 F.2d at 374).

Under *Boeing,* there must be a conflict in substantial evidence to create a jury question. Thus, a court should grant a motion for judgment as a matter of law "not only when the non-movant presents no evidence, but also when there is not a sufficient 'conflict in substantial evidence to create a jury question.'" *Travis,* 122 F.3d at 263 (quoting *Boeing,* 411 F.2d at 374). "Substantial evidence is defined as 'evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions.'" *Rhodes,* 75 F.3d at 993 (quoting *Boeing,* 411 F.2d at 374). "A mere scintilla of evidence is insufficient to present a question for the jury." *Boeing,* 411 F.2d at 374.

### Analysis

Defendant contends that Plaintiff did not have a disability that substantially im-paired his major life activity of working because Plaintiff was able to do a wide range of work, including heavy labor, so long as it did not involve rotating shifts.

▮▮▮▮ The determination of whether an individual plaintiff has a disability that substantially impairs the major life activity of working "is not necessarily based on the name or diagnosis of the impairment the person has, but rather on the effect of that impairment on the life of the individual." 29 C.F.R. § 1630, App. (1996). "Some impairments may be disabling for particular individuals but not for others...." *Id.*[2] A physical or mental impairment "substantially limits" the major life activity of working when an individual is "significantly restricted" in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average individual having comparable training, skills, and abilities. *Bridges v. City of Bossier,* 92 F.3d 329, 332 (5th Cir.1996). The inability to perform a single, particular job or an impairment that affects only a narrow range or category of jobs does not constitute a substantial limitation in the major life activity of working. *Id.* at 332–33 (finding that an impairment that precluded employment in any position "involving routine exposure to extreme trauma" precluded only a "narrow range of jobs"); *see also Wooten v. Farmland Foods,* 58 F.3d 382, 386 (8th Cir.1995) ("restrictions against working with meat products in a cold environment ... only appeared to prevent [plaintiff] from per-

---

**2.** *See Foreman v. The Babcock & Wilcox Co.,* 117 F.3d 800 (5th Cir.1997) (employee's heart condition with surgically implanted pacemaker did not substantially limit the major life activity of working); *McKay v. Toyota Motor Mfg., USA, Inc.,* 110 F.3d 369, 372 (6th Cir. 1997) (diagnosed "carpal tunnel syndrome" did not substantially limit the major life activity of working); *Soileau v. Guilford of Maine, Inc.,* 105 F.3d 12, 15 (1st Cir.1997) (employee's chronic depressive disorder did not substantially limit the assumed major life activity of "get[ting] along with others"); *Robinson v. Global Marine Drilling Co.,* 101 F.3d 35, 37

(5th Cir.1996) (asbestosis sufferer who experienced episodic shortness of breath due to a reduced lung capacity was not substantially limited in the major life activity of breathing); *Oswalt v. Sara Lee Corp.,* 74 F.3d 91, 92 (5th Cir.1996) (" '[h]igh blood pressure, alone, without any evidence that it substantially affects one or more major life activities, is insufficient to bring an employee within the protection of the ADA' "); *Dutcher v. Ingalls Shipbuilding,* 53 F.3d 723, 726 & n. 11 (5th Cir.1995) (evidence of a partially crippled arm insufficient to meet the standard of substantially limiting a major life activity).

forming a narrow range of meatpacking jobs").

■ The Court concludes that because Plaintiff could do a wide range of jobs, including heavy labor, and because only his ability to do rotating shift work was impaired, Plaintiff was not a disabled person entitled to recover under the ADA.

■ Even if Plaintiff qualified as substantially impaired in the activity of working, there is another reason that Plaintiff cannot recover in this case. After considering the evidence in the light most favorable to Plaintiff, the Court concludes as a matter of law that Defendant Wheelabrator could not reasonably accommodate Plaintiff by providing a job with his requested schedule.

■ The ADA does not require an employer to accommodate a disabled employee by creating a new job position, promoting an individual with a disability, transferring an employee to another job where that transfer violates seniority rights under a Collective Bargaining Agreement, eliminating essential functions of a job, or assigning existing employees or hiring new employees to perform abandoned essential functions of a position. *Turco v. Hoechst Celanese Corp.,* 101 F.3d 1090, 1094 (5th Cir.1996); *Daugherty v. City of El Paso,* 56 F.3d 695, 700 (5th Cir.1995) (citing *Chiari v. City of League City,* 920 F.2d 311, 318 (5th Cir. 1991)), *cert. denied,* 516 U.S. 1172, 116 S.Ct. 1263, 134 L.Ed.2d 211 (1996). Plaintiff alleged that during the relevant time period there were open positions for which he was qualified and which would have accommodated his disability. He alleged that the Defendant refused his requests for those positions. There is no evidence to support those allegations.

The undisputed evidence at trial was that there were no available non-rotating shift jobs at Wheelabrator for which Plaintiff was qualified by experience and seniority. The uncontroverted evidence was that Defendant's manager tried to devise a work schedule that would accommodate Plaintiff without violating the rights of his co-workers and that he was unable to do so.[3] Defendant was not required by the ADA to create a new job just for Plaintiff. Defendant was not required to promote Plaintiff to a straight shift job or to transfer another employee to another job in violation of the seniority bid procedures in the Collective Bargaining Agreement or the seniority rights of his co-employees. The Defendant is not required by the ADA to assign less desirable aspects of a job or less desirable schedules or work times to other employees or to hire new employees to perform abandoned functions of Plaintiff's rotating shift dozer job.

For the foregoing reasons, judgment will be entered for the Defendant.

### Conclusion

Judgment for the Defendant will be entered in accordance with this order.

It is SO ORDERED.

3. On the next to the last day of trial, Plaintiff for the first time produced a computer generated schedule which, although it did not comply with the Collective Bargaining Agreement, purported to offer acceptable schedules for three of the crews and which would permit Plaintiff to work a non-rotating schedule. The proposed schedule was never presented to the Defendant before the trial, and in any event, created a highly irregular schedule for the fourth crew.