Neal F. GASSER, Plaintiff,

v.

Charles H. RAMSEY, Defendant.

Civil Action No. 00–534 (GK).

United States District Court,
District of Columbia.

Oct. 10, 2000.

Michael P. Deeds, James L. Kestell, Kestell and Associates, Falls Church, VA, for plaintiff.

Robert A. DeBerardinis, Jr., E. Louise R. Phillips, Office of Corporation Counsel, Office of the Administrator, Washington, DC, for defendant.

## MEMORANDUM OPINION

KESSLER, District Judge.

### I. Introduction

Plaintiff Neal F. Gasser, a District of Columbia police officer, brings suit against his employer under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and Section 501 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 791 *et seq.*[1] Plaintiff alleges that Defendant has discriminated against him on the

---

1. The parties do not argue, and the case law does not indicate, that the relevant analytical or legal questions depend on whether Plaintiff's cause of action is brought under the ADA or the Rehabilitation Act. *See, e.g., Daugherty v. City of El Paso,* 56 F.3d 695, 697–98 (5th Cir.1995). Therefore, this Opinion simply refers to the ADA.

basis of disability, real or perceived, by placing him on limited duty, restricting him to desk work and (for a limited period of time) forbidding him from wearing his uniform and carrying his gun. Plaintiff alleges that Defendant perceives him to be disabled because he was diagnosed with a Protein S deficiency in June 1996 and must take prescription medication, Coumadin, to prevent his blood from clotting.

Before this Court is Defendant Charles H. Ramsey's Motion for Judgment on the Pleadings, pursuant to Fed.R.Civ.P. 12(c). Upon consideration of the parties' pleadings and the entire record herein, Defendant's motion for judgment on the pleadings [# 15] is **denied.**

## II.  Statement of Facts [2]

Plaintiff has been a police officer with the District of Columbia Metropolitan Police Department for over thirteen years. Plaintiff alleges that he has regularly received positive performance evaluations and has received two promotions, most recently to the position of Supervisory Sergeant in May 1994. Plaintiff alleges that he performed his full duties as Supervisory Sergeant from January 1997 through December 1998, and that throughout that period he had informed the Police and Fire Clinic ("the Clinic"), which is responsible for the medical treatment of D.C. police officers, that he took the prescription drug Coumadin.

In December 1998 Plaintiff sprained his wrist in an off-duty car accident. He promptly reported the accident to Defendant and submitted to examination by the Clinic as required. He alleges he was "temporarily disabled" for three weeks due to his sprain. When he returned to the Clinic at the end of the three weeks, Plaintiff alleges that the Clinic's physician told him he could not return to full duty solely because he took Coumadin. According to

Plaintiff, the physician's rationale was that any severe trauma could lead to Plaintiff's death from blood loss.

Defendant sent Plaintiff to an independent medical examiner specializing in hematology and oncology, who prepared a report for the Clinic on June 25, 1999, concluding that Plaintiff could return to full duty. Plaintiff alleges that he was subsequently sent to another doctor who did not specialize in hematology, who prepared a report on August 19, 1999, that "recommended that Plaintiff be restricted to office duties, but which allowed Plaintiff to perform '[ ] full duty activities.'" Complaint at 4. Plaintiff states that his treating physician provided Defendant with a written report concluding that Plaintiff could perform his full duties.

Defendant kept Plaintiff on limited duty until December 1999, when he was finally granted permission to wear his uniform and badge and carry his weapon but still restricted to office work. Plaintiff alleges that other supervisors currently work substantial overtime and for outside employers, but that Defendant prevents Plaintiff from doing either.

Plaintiff states that he filed a claim of disability discrimination with the EEOC on August 12, 1999, and that the EEOC has authorized him to bring suit. Plaintiff requests that this Court order Defendant to return Plaintiff to full duty, to pay his lost wages and benefits with interest, to compensate him for pain and suffering, to pay punitive damages, and to pay his costs. Plaintiff also seeks an injunction to prevent Defendant from engaging in similar conduct in the future.

## III.  Standard of Review

Because this is a Rule 12(c) motion for judgment on the pleadings, the Court must "view the facts presented in the pleadings

2.  For purposes of ruling on Defendant's motion, the factual allegations of the Complaint must be presumed to be true and liberally construed in favor of the plaintiff. *Shear v.*

*National Rifle Ass'n of Am.,* 606 F.2d 1251, 1253 (D.C.Cir.1979). Therefore, the facts set forth herein are taken from Plaintiff's Complaint.

and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Moore v. United States*, 213 F.3d 705, 713 n. 7 (D.C.Cir.2000) (internal citations and quotations omitted). The Court may not consider evidence "outside the scope of the complaint." *Terry v. Reno*, 101 F.3d 1412, 1423 (D.C.Cir.1996). The moving party must show "that no material issue of fact remains to be solved, and that he or she is clearly entitled to judgment as a matter of law." *Haynesworth v. Miller*, 820 F.2d 1245, 1249 n. 11 (D.C.Cir.1987) (citing numerous cases).

## IV. Analysis

### A. Requirements for Bringing an ADA Claim

The ADA prohibits an employer from discriminating against a "qualified individual with a disability because of the disability of such individual." 42 U.S.C. § 12112(a). An individual has a "disability" within the meaning of this section if he has, or is *"regarded as having,"* "a physical or mental impairment that substantially limits one or more of the major life activities of such an individual." 42 U.S.C. § 12102(2)(A) & (C) (emphasis added). "Major life activities" are defined as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. 1630.2(i). To show that his ability to work is "substantially limited," Plaintiff must show that he would be "significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes compared to the average person having comparable training, skills and abilities." 29 C.F.R. 1630.2(j)(3)(i).

To state a claim under the ADA, a plaintiff must prove not only that he is disabled or "regarded" as being disabled, but also that he is a "qualified individual" under the Act (*i.e.*, able to perform the essential functions of the job, with or without reasonable accommodation), and that he has suffered an adverse employment action because of his real or perceived disability.

*See Swanks v. WMATA*, 179 F.3d 929, 934 (D.C.Cir.1999). Because there is no dispute regarding whether Plaintiff is a "qualified individual," the Court will not address this ADA element.

### B. Plaintiff Adequately Alleges That He Is Regarded As Having A Disability

### 1. The Condition Resulting from Plaintiff's Medication is Considered a Disability under the ADA

Plaintiff argues that Defendant has "regarded" him as disabled because Plaintiff has a Protein S deficiency and takes medication to alleviate this disease which has a side effect of blood thinning. Defendant contends that Plaintiff is not disabled or regarded as disabled because, while taking his medicine, "he has experienced no difficulty whatsoever." Def.'s Mot. for J. on Pleadings at 6.

Defendant misunderstands the relevant inquiry. The Supreme Court has held that "the determination of whether an individual is disabled should be made with reference to measures that mitigate the individual's impairment." *Sutton v. United Air Lines*, 527 U.S. 471, 475, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999). The relevant inquiry is whether "the limitations an individual with an impairment *actually* faces are in fact substantially limiting." *Id.* (emphasis in original). Any argument that "persons be judged in their uncorrected or unmitigated state runs directly counter to the individualized inquiry mandated by the ADA." *Id.* at 483–84, 119 S.Ct. 2139.

Based on the clear import of *Sutton*, Plaintiff has alleged the existence of a disability. While he may not experience any job-related difficulty because of the Protein S deficiency, this is because he takes medication (Coumadin), which itself causes Plaintiff's blood to thin, thus exposing him to danger (according to Defendant). In other words, it is the Coumadin, as the mitigating measure, not the under-

lying Protein S deficiency, which causes Plaintiff's disability, real or perceived. *See Sutton,* 527 U.S. at 475, 483, 119 S.Ct. 2139. Accordingly, Plaintiff's blood thinning condition—which is the alleged reason for his being transferred to a desk job—is properly considered a "disability" for purposes of the ADA.

### 2. Plaintiff Adequately Alleges that His Perceived Disability "Substantially Limits" His Job Performance

Because *work* (rather than walking, speaking, seeing, etc.) is the "major life activity" that allegedly "substantially limits" Plaintiff from performing his job, he must show that he is "unable to work in a *broad class of jobs.*" *Sutton,* 527 U.S. at 491, 119 S.Ct. 2139 (emphasis added). In other words, Plaintiff must allege that the purported rationale for the discrimination against him has precluded him from performing not just his present (or rather, former) job, but from a whole host of jobs. *Id.*

Plaintiff alleges that Defendant's rationale for discrimination (*i.e.,* for reassigning him to a desk job) is that Plaintiff's condition subjected him to the possibility of "severe trauma" while on police patrol. Plaintiff contends that this rationale would prevent him from obtaining employment in a large category of jobs, and accordingly, his "regarded" disability should be considered a "substantial limit" on his ability to work. According to Plaintiff, one is inherently subject to severe trauma in a large category of jobs, particularly those which require employees to drive (many jobs), to use heavy machinery (assembly line workers and general manufacturing), or to expose themselves to physical danger (police officers, firefighters, security guards, construction workers).

Further, Plaintiff contends that the police district to which he was assigned was a "business district" with minimal risk of combat, and that he had "never been faced with a combat situation . . . since being assigned" there in 1994. Pl.'s Opp'n to Def.'s Mot. for J. on Pleadings ("Pl.'s Opp'n") at 11 n.4. Therefore, his risk of experiencing truly "severe trauma" was slight, thus undercutting Defendants' purported excuse for reassigning him, and, more importantly, showing that Defendant's justification, if true, would remove Plaintiff from a large number of jobs in the economy.

Since Defendant did not file a Reply Brief, it is impossible to know precisely what his response would be.[3] Even though Defendant acknowledges in his Motion the recent Supreme Court decisions which shed light on the issue of "substantial impairment," *Sutton v. United Airlines, supra,* and *Murphy v. UPS,* 527 U.S. 516, 119 S.Ct. 2133, 144 L.Ed.2d 484 (1999), he then proceeds to rely on earlier, non-binding cases from other federal circuits which Defendant claims "portend[ed]" the Supreme Court's decisions in *Sutton* and *Murphy* by dismissing complaints that Defendant claims were similar to the one in the instant case.

Defendant emphasizes one decision in particular, *Bridges v. City of Bossier,* 92 F.3d 329 (5th Cir.1996). The Court finds his arguments unpersuasive. In fact, *Bridges* cuts against, rather than in favor of, Defendant. In *Bridges,* the plaintiff applied to be a firefighter but was rejected because he had a mild form of hemophilia, which caused him to potentially experience severe blood loss under certain conditions. The rationale provided for the discriminatory decision was that, just as in the instant case, the plaintiff would be exposed to "extreme risk of severe trauma" as a firefighter, and such a trauma would expose the plaintiff to "excessive bleeding." *Id.* at 331, 333 n. 4. The district court

---

**3.** Defendant filed a praecipe indicating that it "waives his right to file a reply" to Plaintiff's Opposition.

found in favor of the defendant, after a bench trial, on the ground that only a narrow class of jobs routinely exposes employees to "extreme trauma" and therefore plaintiff could not claim he was "substantially limited" under the ADA because of his condition. The Fifth Circuit affirmed.

What is important about *Bridges*, at least for the purposes of the instant case, is that the court found, based on expert testimony, that *firefighters alone* among emergency personnel routinely experience severe trauma on the job. In fact, it noted that they subject themselves to such trauma every time they "enter a structure fire" or attempt to locate victims in a fire. *Id.*

Significantly, the court concluded that there was "no record evidence that law enforcement personnel [in contrast to firefighters] are routinely exposed to extreme trauma." *Id.* at 333. The court likewise found that EMTs and paramedics, while certainly exposed to traumatic situations, were not subjected to the same level of trauma as firefighters (*i.e.*, "extreme trauma"). *Id.* at 334 n. 6. The court, in other words, defined the phrase "extreme trauma" in an exceedingly narrow sense—certainly much different than the definition Defendant in this case would have the Court adopt.

In the present case, Defendant has failed to show that the kind of trauma a police officer routinely encounters (especially one who works in a business district which entails little combat action, as was the case with Plaintiff prior to his transfer) is significantly different from the kind of trauma that large numbers of employees face in the course of different lines of employment. Accordingly, since the way that Defendants allegedly regard Plaintiff's disability would potentially preclude him from a "broad class" of jobs, he has sufficiently pled the existence of a "substantial limiting" disability.

### C. Plaintiff Has Adequately Alleged an Adverse Employment Action

The final factor Plaintiff must plead is that an "adverse employment action"

was taken against him. Plaintiff has made this showing, for purposes of surviving Defendant's motion.

Both parties correctly cite *Brown v. Brody*, 199 F.3d 446 (D.C.Cir.1999), a recent D.C. Circuit opinion addressing this issue. In that decision, our Court of Appeals declared that a plaintiff must show that the action taken against him or her has "materially adverse consequences affecting the terms, conditions, or privileges of her employment or her future employment opportunities." *Id.* at 457. Merely being transferred from one department to another, without "diminution in pay or benefits" is not sufficient. *Id.*

Defendant contends that Plaintiff received a "lateral transfer" just like the plaintiff in *Brown* and therefore has not satisfied the showing for an "adverse employment action." Defendant further argues that, to the extent that Plaintiff has lost the opportunity to receive overtime pay, he was never "entitled" to such overtime, and therefore cannot claim his new job placement affects any of his terms or conditions of employment.

The Court finds that Plaintiff has satisfied the standard articulated in *Brown v. Brody* for an adverse employment action. Plaintiff has certainly been "aggrieved" by the action taken against him. *See Cones v. Shalala*, 199 F.3d 512, 521 (D.C.Cir.2000). Plaintiff contends that in his new desk job, he is ineligible for $20,000 per year in overtime pay. This is a tangible loss of benefits, and it matters not whether Plaintiff was legally "entitled" to the overtime pay or not. *See Passer v. American Chem. Soc'y*, 935 F.2d 322 (D.C.Cir.1991) (employer's cancelling of symposium in honor of plaintiff was adverse employment action, even though ceremony was gratuitous) (cited approvingly by *Cones*, 199 F.3d at 521). In addition, he alleges that he has lost "promotional opportunity as a result of his being put on light duty status." Pl.'s Opp'n at 18; *see also Cones*,

199 F.3d at 521. These circumstances, if true, would be sufficiently "material" to constitute an adverse employment action. *See Brown,* 199 F.3d at 456–57 (citing *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998)).

## V. Conclusion

For the reasons expressed above, Plaintiff has stated a claim under the ADA and/or Rehabilitation Act. Accordingly, Defendant's motion for judgment on the pleadings is **denied.**